CITY OF CREVE COEUR, a municipal corporation (Plaintiff), Appellant,

v.

Homer R. PATTERSON, Jr., and Delores M. Patterson et al. (Defendants), Respondents,

Jack Copilevitz and Betty Copilevitz et al. (Intervenors), Respondents.

No. 29935.

St. Louis Court of Appeals.

Missouri.

June 3, 1958.

Robert W. Henry, St. Louis, William H. Wyne, Jr., Clayton, for appellant.

Lewis, Rice, Tucker, Allen & Chubb, James A. Singer, and J. L. Pierson, St. Louis, for Industrial Properties, Inc.

## WOLFE, Commissioner.

This is an action for a declaratory judgment under Section 71.015 and Chapter 527, RSMo 1949, and Supp.1957, V.A.M.S. The City of Creve Coeur seeks to annex an area of approximately 1200 acres which adjoins the city to the north. A number of defendants and intervenors oppose the proposed annexation. The court found in favor of the defendants and intervenors, and the city prosecutes this appeal.

The City of Creve Coeur is a city of the fourth class in the County of St. Louis. It was incorporated as such on December 21, 1949. The area within the city consists of 3,166 acres of land and the population at the time of the trial was estimated by one witness at 3,000 persons. Another witness estimated the city's area as 4,000 acres and placed its population at 3500.

The northern boundary of the city is a line 200 feet north of Olive Street Road and parallels that road from the eastern to the western city boundaries.

The eastern city boundary is Warson Road and this is also the western boundary of the city of Olivette. The eastern part of Creve Coeur is traversed from north to south by U. S. Highway 66, which is called Lindbergh Boulevard. The commercial district of the city is along Olive Street Road and along Lindbergh Boulevard south of Olive Street Road. At the intersection of these two thoroughfares there are traffic lights and it is a busy intersection.

There are a number of homes in the City of Creve Coeur on three, eight and ten acre tracts of land and there are also some farms. A former member of the city's planning commission testified on behalf of the city and stated that there were six or seven farms between his home and the western boundary of the city. He estimated that one fourth of the city was not platted and that from 600 to 800 acres within the city are unimproved land. Near the western city boundary is a spur of the Missouri Pacific Railroad and another witness for the city testified that the territory in the area of the spur could be used for industrial purposes. There is also within the city an area zoned for multiple dwellings.

In the southeastern part of Creve Coeur in the area between Olive Street Road on the north, Warson Road on the east, and Lindbergh Boulevard on the west, the Monsanto Chemical Company is constructing an office building and laboratories which will serve as the company's main headquarters. The value of such buildings was not in evidence other than it would run into "millions".

The area sought to be annexed extends westwardly from the western boundary of Olivette along the northern boundary of the City of Creve Coeur for slightly less than two thirds of the length of Creve Coeur's northern boundary. Its western boundary goes in almost straight line to the north. The northern boundary of the area parallels an electric transmission line and the northern line of a railroad right of way back to the city limits of Olivette. It was stated that this area was historically known as Creve Coeur before the City of Creve Coeur was incorporated.

The planning director for the St. Louis County Planning Commission was called by the plaintiff and he testified that the area is being used primarily for agricultural purposes. It was originally zoned by the county for one acre building lots, but it

has been down graded to lots of 20,000 square feet for single family residences. This is slightly less than one half acre. There are several subdivisions in the area. One of these, started by a man named Patterson, has about twenty houses in it and more are being built. There is one called Country Squire in which there are six houses and more are being built. Another subdivision called Arrowhead has about twenty houses in it, and others are under construction along Schulte Road. Schulte Road is in the western part of the area and runs north from Olive Street Road.

To the east of Lindbergh Boulevard along the railroad right of way, which borders the area on the north, is an industrial section. This has been zoned and developed for industrial purposes. It lies slightly less than a mile from the northern boundary of the City of Creve Coeur. It is reached from Lindbergh Boulevard and has its own streets. There are but two main roads in the whole area except for Lindbergh Boulevard and Warson Road. These two are Schulte Road, which runs generally northwardly from Olive Street Road, and Schuetz Road which runs in a general east and west direction in the northern part of the area west of Lindbergh Boulevard. Graeser Road and Schulte Road are the only roads that run into Creve Coeur from the part of the area west of Lindbergh.

The City of Creve Coeur upon being incorporated took over the maintenance of roads within its corporate limits, which had previously been maintained by the county. Since then it has added one road to city maintenance. The city does not do any work on these roads but contracts with private contractors for their maintenance. For this purpose it spends about $25,000 a year. It also maintains one light at main road intersections. The streets maintained by the city constitute only twenty to twenty-five per cent of the streets in the city, and all the rest of them are maintained by the subdivision that they serve.

It is a policy of the city not to take over the maintenance of any new streets.

The City of Creve Coeur has no fire department. It is served by a volunteer fire department which also serves part of the area that Creve Coeur seeks to annex. The city has no other services, such as garbage or trash collections. It has no city hall but is building up a surplus, which one witness said was "seventy some thousand dollars", for the purpose of getting a city hall and "a park and different things". The city has no health department and contracts with the state and county health departments for such services as it needs. It does have a police department, consisting of five men. It has two police cars which have radios and can be directed from the St. Louis County Police Department. It has one man on duty in the daytime and two men at night. The police chief said that it would be easier to patrol Lindbergh Boulevard if the boundaries of the city were extended to the north. As the boundaries are now the police patrol only two hundred feet beyond Olive Street Road on Lindbergh Boulevard. Lindbergh Boulevard is patrolled by the county police and also by the State Highway Patrol. The county police maintain a station at the corner of Lindbergh and Olive Street Road at the filling station there, where they make out their reports and one man is always on hand, but he patrols a larger area than the Creve Coeur police.

The area proposed to be annexed is served by the county police force which the defendants said they considered adequate. The roads in the area are county maintained and with this the residents are also satisfied. There was testimony that the part of Schulte Road maintained by the county was kept in better condition than that part which was in the City of Creve Coeur. The industrial area has arranged for fire protection from an existing fire district to the north.

On behalf of the city, the chairman of its annexation committee testified that the

city needed the land in question east of Lindbergh for a multiple dwelling area to supply housing for the people who would work at the Monsanto offices and in the industries to the north. He said that the city needed the area to the west as a buffer to protect the present homes in the City of Creve Coeur. He also testified that the city needed the industrial area for tax purposes. It was stated that the city could more readily zone the area sought to be annexed than the county zoning commission.

The foregoing constitutes the pertinent evidence brought forth and upon this the court made the following findings of fact:

1. That the proposed annexation is not reasonable and necessary to the proper development of said City because:

(1) The City presently includes large tracts used for agricultural purposes.

(2) The City includes land along a railroad right-of-way, which is in use and could be zoned by the City for industrial purposes if the City desired industrial sites.

(3) The City has areas zoned for multiple dwelling which are not now used for multiple dwelling purposes and could be so used.

(4) The area proposed to be annexed is largely now used as agricultural property. Except for an insignificant area, this has not been platted for lots. The property owned by Industrial Properties, Inc., and those to whom it has sold at the extreme northeast corner of the area, is separated from the balance of the property in said area by large tracts used for farming purposes and further separated by U. S. Highway 66 (Lindbergh Boulevard) and the water-shed ridge along it.

(5) The proposed annexation would extend the area of the City of Creve Coeur by approximately one-third of the present size of said City and would cross the above mentioned water-shed boundary and the section of U. S. Highway 66 north of Olive Street Road to the Rock Island Right-of-way. The present northern boundary of said City 200 feet north of Olive Street Road is a long established, well recognized, proper and regular boundary.

(6) The City has no plans for the area.

(7) The City is not presently using all of its revenue.

(8) The City is not zoning or using the land which it has available for multiple dwelling and industry.

(9) The City does not yet have the revenue from the large acreage extending from Warson Road on the East to Lindbergh on the West and Tealwood on the South and Olive Street Road on the North, on which Monsanto has and is erecting its world-wide offices and laboratory, at a value in the "millions", which the Assessor has not yet put on the books.

(10) That there are no east-west roads within the area proposed to be annexed from the south boundary of Creve Coeur to the Rock Island Right-of-way in the area east of Lindbergh between Warson and Lindbergh except Olive Street Road and the private road built by Industrial Properties, Inc. West of Lindbergh in the area proposed to be annexed the only roads are Schulte Road and Schuetz Road.

2. That the City of Creve Coeur is unable to furnish normal municipal services of said city, or minimal municipal services, to the area proposed to be annexed within a reasonable time because:

(1) The City is presently furnishing none of the following municipal services and has no plans to furnish same: Municipal fire protection, garbage collection, refuse collection, public parks, public playgrounds, health and sanitation except under contract with the St. Louis County Health Department, or street lighting except at a few major intersections.

(2) The City has a policy not to take over for public maintenance roads within the present city limits. The City maintains only twenty-five per cent of the roads within the present city limits and all of these, with one exception, were taken over for public maintenance prior to the incorporation of said City. The Court finds that the City of Creve Coeur is spending a negligible amount of its own funds for road maintenance, the overwhelming amount coming from the Road Fund of St. Louis County. The City at the end of 1956 had a balance of $6,252.61 in said County Fund which was greater than the balance at the beginning of 1956 by almost $300.00. The maintenance on Schulte Road which runs both within the City of Creve Coeur and within the area proposed to be annexed has been better on that part maintained by the County than on that part maintained by the City of Creve Coeur.

(3) The City of Creve Coeur would not be able to provide normal police services within a reasonable time to the area proposed to be annexed. The City has a force of five policemen, patrolling ten square miles which permits one man to be on duty during the daytime and two at night. The Creve Coeur police station is at a greater distance from the area proposed to be annexed than the service and check-in station of the St. Louis County Police Department, from which one man operates at all times. The City has no plans to enable it to provide such service within a reasonable time.

(4) The City of Creve Coeur has no plans for zoning and for provision of municipal services within the area proposed to be annexed.

(5) The City is not presently providing normal municipal services within the City of Creve Coeur itself.

(6) The Court had no statement supporting the City's claim to be financially able to provide normal municipal services of said city to the area proposed to be annexed.

3. That the City had not prepared as of the date of trial, February 20, 1957, a financial statement covering the period ending December 31, 1956 as required by RSMo 1949, Secs. 79.-160–165, V.A.M.S.

■ We review this case as we do cases in equity on all matters properly before us and reach our own conclusions. In doing this, we accord due deference to the trial court's findings, particularly where the credibility of any testimony appears doubtful. St. Louis Housing Authority v. City of St. Louis, en banc, 361 Mo. 1170, 239 S.W.2d 289; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616; City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546.

■ The appealing city asserts that the court substituted its discretion for that of the legislative body of the City of Creve Coeur. On this point the function of the court in annexation cases under Section 71.015, RSMo 1949, Supp.1957, V.A.M.S., has been fully discussed in two cases. The first of these is City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546, and the second is City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, 9. In the last case the Supreme Court had under consideration the constitutionality of the act which had been attacked on the ground that it constituted

a delegation of legislative authority to the courts. In disposing of that point the opinion quite clearly defines the function of the court. It states:

"We construe § 71.015 as merely giving to the courts, in advance of a consummated annexation, the same judicial power and authority to test the reasonableness and necessity for an annexation which they have always exercised after its completion; that is to say, to decide whether the legislative declaration by the city is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of its legislative power."

It is also equally clear that the statute effects a procedural change which places the burden of proof upon the city in contrast to the previous procedure which permitted the annexation to be consummated by the city, and then the courts acted when those in the territory annexed sought to enjoin the enforcement of the annexation, usually by quo warranto. City of St. Joseph v. Hankinson, supra; City of St. Ann v. Buschard, supra.

The appellant relies upon the following cases in support of its contention that it has proven the reasonableness of the proposed annexation. Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236; City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546; Mauzy v. City of Pagedale, Mo.App., 260 S.W.2d 860. In the first of these cases, Dressel v. City of Crestwood, there was evidence that the city's boundary was the north side of a highway occupied by many businesses and the south side of the highway was put to the same use. There was a great need for a common control of the highway. Crestwood also had plans for bringing water and sewage service into the annexed area. None of these conditions are present in the case before us. There is practically no evidence about the commerce of the City of Creve Coeur. All that there is comes in indirectly, such as the testimony of one man who said that he did his bank-

ing in Creve Coeur and bought his supplies there. From this we could surmise that it has some sort of a bank and some sort of a store, but there is no direct evidence of any consequence. In City of St. Ann v. Buschard, the city had parks, playgrounds, a health commissioner, water, and its own sewers, which could be used by the territory proposed to be annexed. Creve Coeur has none of these and there was no evidence of any plans to furnish them either to the area proposed to be annexed or in the city itself. In Mauzy v. City of Pagedale, the city was maintaining sewers, arranging for the extension of water lines and fire plugs, and had its own garbage and rubbish collections. Creve Coeur presented no plans for any of these.

The only reason advanced for taking in the industrial area was a frank admission that they wanted it for the taxes that it would yield. There was evidence that the Monsanto Chemical Company was engaged in constructing a large office building in the City of Creve Coeur, but there was no evidence as to the number of people that would be employed there; nor was there any evidence as to what percentage, if any, of those so employed might be expected to move from their present homes to the area of their employment. There was no evidence of the number employed in the industrial area sought to be annexed or where those so employed lived.

All of the evidence introduced by the city was incredibly vague as to the existing or planned municipal services either in the city or in the area it proposed to annex.

█ As stated in Mauzy v. City of Pagedale [260 S.W.2d 864]: "There can be no hard and fast rule laid down for determining the reasonableness of a proposed extension." The general rules are set forth in City of St. Joseph v. Hankinson, supra, and City of St. Ann v. Buschard, supra, so we shall not restate them. It is sufficient to say that upon the evidence presented the city failed to make its case and that reasonable men would agree that

the proposed extension has not been considered with discretion but was capricious and unreasonable.

For the foregoing reasons, it is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

RUDDY, P. J., ANDERSON, J., and REGAN, Sp. J., concur.