**CITY OF OLIVETTE, a Municipal Corporation, Appellant, (Plaintiff),**

v.

**Walter GRAELER and Ruth Graeler, His Wife, et al., Being Representatives of a Class of Inhabitants of a Certain Unincorporated Area, Respondents, (Defendants). Industrial Properties, Inc., a Corporation, Respondent, (Intervenor-Defendant).**

No. 47983.

Supreme Court of Missouri,
Division No. 2.
Sept. 12, 1960.

Motions for Rehearing or for Transfer to Court en Banc Denied Oct. 10, 1960.

Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for appellant, City of Olivette.

Claude W. McElwee, St. Louis, Lewis, Rice, Tucker, Allen & Chubb, James A. Singer, J. L. Pierson, Clayton, Stolar, Kuhlmann & Meredith, Fred L. Kuhlmann, Fred Drews, St. Louis, Fordyce, Mayne, Hartman, Renard & Stribling, Thomas Rowe Schwarz, St. Louis, for respondents.

Samuel A. Mitchell, Charles M. Spence, St. Louis, Thompson, Mitchell, Thompson & Douglas, St. Louis, of counsel, amici curiae.

Thos. J. Neenan, City Counselor of City of St. Louis, Aubrey B. Hamilton, Associate City Counselor, Thomas F. McGuire, Associate City Counselor, St. Louis, for City of St. Louis.

Philip A. Maxeiner and Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for St. Louis county Library Board.

STORCKMAN, Judge.

This is a declaratory judgment action brought by the City of Olivette in connection with its proposal to annex an area adjoining it in St. Louis County. The action is being prosecuted pursuant to Section 71.015 RSMo 1949, V.A.M.S., Laws 1953, p. 309, § 1, which is commonly referred to as the Sawyer Act. The original defendants, inhabitants and landowners in the area to be annexed, were sued as representatives of a class. Other interested persons were permitted to intervene as defendants. All of them are resisting annexation.

Trial was had by the court without a jury and a declaratory judgment was rendered authorizing the proposed annexation. Thereafter the trial court sustained the defendants' motions for a new trial and entered judgment dismissing the plaintiff's petition. The court concluded that § 71.015 was not applicable in that the area sought to be annexed was not an "unincorporated area" within the purview of the statute because it was being furnished services of a municipal nature by St. Louis County operating under its constitutional home rule charter.

Plaintiff's appeal was taken to the St. Louis Court of Appeals but was transferred to this court on the theory that a construction of § 18 of Art. VI of the 1945 Constitution of Missouri V.A.M.S. was involved. The defendants raised in their answer and have preserved and presented on appeal the contention that the adoption by St. Louis County of a constitutional home rule charter with provisions for furnishing municipal services in the part of the county outside of incorporated cities pursuant to Art. VI, § 18, of the Constitution had the force and effect of constituting all of St. Louis County an incorporated area and, therefore, the plaintiff City was not entitled to maintain this declaratory action because the Sawyer Act by its terms was applicable only to the annexation of an "unincorporated area of land". This contention involves a construction of Art. VI, § 18, of the Constitution of this state

and jurisdiction of the appeal is properly in the supreme court. Art. V, § 3; City of Olivette v. Graeler, Mo.App., 329 S.W. 2d 275.

The briefs of three amici curiae join with the defendants in advocating affirmance of the trial court's judgment. The brief of the St. Louis County Library District asserts that it was established in 1946 pursuant to what is now § 182.010; that it furnishes library services to the areas of St. Louis County outside of incorporated cities and in some of the cities; and that it opposes annexations generally because in some instances there is a loss of tax revenue and territory to be served. The interest of the City of St. Louis in this litigation arises out of a similar proceeding by the City of Berkeley to annex an area in St. Louis County occupied in part by the Lambert-St. Louis Municipal Airport owned and operated by the City of St. Louis. The Monsanto Chemical Company has erected office buildings and laboratories on a 155-acre tract in the City of Creve Coeur immediately south of the area proposed to be annexed at a cost of approximately $15,000,-000 and plans to utilize a portion of the area in question for the construction of additional facilities in connection with the Company's world headquarters being established in St. Louis County. It contends the City of Olivette could render it no service and would hinder its operations, particularly in the field of zoning and taxation.

The classification of Olivette from 1930 until 1957 was that of a town or village. In January 1957, it became a city of the third class and adopted the city manager-council form of government which is an optional or alternative form under which cities of the third class may organize pursuant to Chapter 78, RSMo 1949, V.A.M.S. This action was instituted on February 13, 1957, pursuant to an ordinance adopted the day before. The present land area of Olivette is 2.66 square miles or 1703 acres. A census taken by city employees in July 1956 showed a population of 4980 persons. Generally, the principal municipal services

rendered by the City of Olivette are fire and police protection twenty-four hours a day, a health department partially in co-operation and under contract with St. Louis County, and a building commission and city development director which handles building inspection and enforcement of zoning. The evidence tended to show that these and other services could be extended promptly to the area in question. In addition to its residential sections, the city has substantial commercial and industrial developments. It is in the Ladue School District. Based on information taken from the City Tax Rolls, the plaintiff's evidence tended to prove that about 89% of the city's area was developed and about 11% undeveloped or unplatted. In making this computation, if a subdivision was laid out, it was considered fully developed and included in the 89% even though there were no houses on it. At another place 190 acres within the city limits were said to be undeveloped.

Generally, the City of Olivette is bounded on the south by the City of Ladue; on the west by the City of Creve Coeur and a line 150 feet east of Warson Road; on the north by the right of way of the Chicago Rock Island and Pacific Railroad Company; and on the east by University City. Olive Street Road bisects Olivette from east to west. The area the City proposes to annex consists of .47 square miles or 303 acres. It is bounded on the south by the City of Creve Coeur, the northern limits of which is a line about 250 feet north of Olive Street Road; on the west by Lindbergh Boulevard; on the north by the Rock Island right of way; and on the east by the present western limits of Olivette which is a line 150 feet east of Warson Road.

The defendants' evidence shows that 173 acres of the area to be annexed is devoted to truck and dairy farming, raising chickens and hogs and egg production. The defendant Graeler lives on Warson Road; he owns 80 acres of land and rents 13 acres adjoining, all of which he farms. His farm buildings, besides his home, consist of three barns, several small sheds for live-stock and pens for cattle, hogs and chickens. Mr. Graeler bought 117 acres of land, including this 80, from his father's estate in 1946 at $200 per acre. In 1955 he sold 37 acres for industrial purposes, presumably to the intervenor-defendant, Industrial Properties, Inc., for $200,000. The defendants, Edwin Zimmermann and Archie Viehmann, live on Lindbergh Boulevard; each owns a 40-acre tract which he farms. On each of these 40-acre tracts, in addition to the homes of the owners, there are the usual farm buildings. Two additional acres on or near Warson Road were owned by a landscape gardener and used in his business. The evidence is not clear but there appeared to be three industrial buildings in the area, either under construction or completed, probably located on the 37-acre industrial tract. This accounts for 212 acres of the area in question. Neither party undertook to prove the nature or use made of the remainder although the defendants' answer alleged that a considerable amount or all of the remainder was vacant land and devoted to agriculture. Defendants' proof also tended to show that over a period of years four residences had been constructed on the 150-foot strip on the east side of Warson Road. These and the homes of three defendants are the only residences shown to be in the area sought to be annexed. The area is zoned by the Planning Commission of St. Louis County in these categories: light industrial, commercial and "20,000 square foot single family residential." But this court cannot determine the location or extent of these zones because the witness merely pointed to them on an exhibit which has not been lodged in this court. This is one of several instances where locations or objects on plats or maps were pointed out without oral description. This method of examination puts nothing in the record that will benefit an appellate court.

The business, industry and population of the entire county, including its towns and cities, have had a very rapid growth in re-

cent years. It was a county of the first class with a population of 406,349 at the time it adopted a home rule charter in 1950 pursuant to the provisions of § 18 of Art. VI of the Constitution. It furnishes services of a municipal nature to parts of the county including the area sought to be annexed. The services include zoning and planning, traffic laws, the police protection by the County Department of Police, health and sanitation services by the health department and the county hospital and road building and maintenance by the county. The area receives its fire protection from the Creve Coeur Fire Department and the West Overland Fire Protection District. Apparently it is in the R-3 school district.

Both the City of Olivette and the area sought to be annexed are furnished water by the St. Louis County Water Company, gas by Laclede Gas Company, electric light and power by Union Electric Company, and sewers by the Metropolitan St. Louis Sewer District. The record is voluminous. Much of the testimony was addressed to the relative merits of the municipal services of Olivette and those rendered by the County of St. Louis to the area in question. The foregoing statement of facts is sufficient for an understanding of the questions to be considered.

In its "Finding and Order and Memorandum", filed when it sustained defendants' motions for a new trial and dismissed plaintiff's petition, the trial court found that in a geographical sense the area sought to be annexed was an "unincorporated area" because it was outside the boundaries of incorporated cities, but that St. Louis County under its home rule charter became possessed of and exercised powers and functions in the unincorporated areas of the county which are identical with the powers and functions of a municipal corporation and concluded:

"If then the legislature in enacting Sec. 71.015 impliedly meant, by using the phrase 'unincorporated area,' both an area which was outside the boundaries of an incorporated municipality and which was not receiving municipal services, the area here involved is not covered by the provisions of said section since the evidence abundantly shows, and the Court finds, that St. Louis County does render to the unincorporated areas of the county (including the proposed to be annexed area) services which are municipal in nature.

"Whether or not these municipal services rendered by St. Louis County in the unincorporated area are as broad or extensive as those services which might be rendered by an incorporated municipality is debatable but not pertinent if we assume the intention of the legislature was to exclude from the purview of Sec. 71.015 those areas which receive municipal services.

"This assumption would appear to be a reasonable one, and one intended by the legislature, since in every county in the State of Missouri, except in St. Louis County, 'unincorporated area' and absence of municipal services are synonymous.

"Since Sec. 71.015 is made expressly applicable only in the event the area to be annexed is an 'unincorporated area,' this is a necessary prerequisite to the court's jurisdiction in proceedings under that statute which is here absent."

We shall first consider whether the territory in question is an "unincorporated area" within the meaning of § 71.015, herein sometimes referred to as the Sawyer Act, which reads as follows:

"Whenever the governing body of any city has adopted a resolution *to annex any unincorporated area of land,* such city shall, *before proceeding as otherwise authorized by law or charter for annexation of unincorporated areas,* file an action in the circuit court of the county in which such *unincorporated area* is situated, under the

provisions of chapter 527, RSMo, praying for a declaratory judgment authorizing such annexation. The petition in such action shall state facts showing: 1. The area to be annexed; 2. That such annexation is reasonable and necessary to the proper development of said city; and 3. The ability of said city to furnish normal municipal services of said city to *said unincorporated area* within a reasonable time after said annexation is to become effective. Such action shall be a class action against the inhabitants of *such unincorporated area* under the provisions of section 507.070, RSMo." [1]

 It is readily apparent that the Sawyer Act is auxiliary to other statutes pertaining to annexation since it expressly provides that the city shall file the action "before proceeding *as otherwise authorized by law* or charter". The act imposes on the annexing city the burden of establishing at the inception of the annexation proceeding rather than at its conclusion those matters which are for judicial determination. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, 10. The Sawyer Act does not purport to be a statutory annexation plan complete within itself.

 As a city of the third class, Olivette's basic authority for the extension of its boundaries is found in § 77.020 which provides that the "mayor and council of such city, with the consent of a majority of the legal voters of such city voting at an election thereof, shall have power to extend the limits of the city over *territory adjacent thereto,* \* \* \*." Annexation statutes applicable to cities of other classes also use the term "over territory adjacent thereto". See §§ 74.015, 75.020 and 79.020. The Sawyer Act applies to cities of all classes because by its terms it applies to *any city.*

 The terms "unincorporated area of land", as used in the Sawyer Act, and "territory adjacent thereto", as used in § 77.020 and other annexation statutes, are not technical words or phrases and, therefore, must be given their plain and ordinary meaning unless such meaning is inconsistent with the manifest intention of the statutory provisions. Rathjen v. Reorganized School District R-II, 365 Mo. 518, 284 S.W.2d 516, 523[9]; Bellerive Investment Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 638[14].

 Sections 71.015 and 77.020 are pari materia; they must be construed with reference to each other and harmonized if possible. Under § 77.020 territory adjoining an incorporated city may be subjected to an annexation proceeding unless it is within the boundaries of another incorporated city. Other statutes specifically provide the method of consolidating or annexing the territory of incorporated cities. A favorable vote by the inhabitants of each city voting separately is required for the consolidation or annexation of adjoining incorporated cities, §§ 72.150–72.220. For a charter city to extend its limits to include another incorporated city, there must also be a favorable vote of the qualified voters in the city to be annexed, § 81.080, subd. 2. It may be the term "unincorporated area" was used in the Sawyer Act to indicate that the Act does not apply where the proposal is to annex the territory of incorporated cities. Since the inhabitants of the area to be affected have the statutory right to vote on the proposal, a declaratory judgment action would seem to be superfluous in such cases.

 When used to describe the land area of a county, the word "unincorporated" ordinarily means that part of the county outside of incorporated cities. For example in Chapter 64, RSMo 1949, V.A.M.S., pertaining to county zoning, planning and recreation, the terms "unincorporated portions of the county" and "unincorporated territory" are used almost exclusively and in a

---

1. All italics within quotations are added unless otherwise noted.

sense that seem to be synonymous and interchangeable with "outside the corporate limits of any city, village or incorporated town." Cf. §§ 64.020, 64.090, 64.100 and 64.080. We find this usage also in the charter of St. Louis County; Art. 3, § 22 (21) empowers the county council to provide for the creation of districts for furnishing certain services of a municipal nature "in the unincorporated areas of the County". The Revised Ordinances of St. Louis County 1958, § 702.030, provides for fire and accident prevention "throughout the unincorporated portions of the County". Defendants' Exhibit B-1, a zoning order for St. Louis County, refers throughout to the "unincorporated portions of St. Louis County." The use of the adjective "unincorporated" to designate the area outside the boundaries of incorporated cities is widespread and of long standing. It no doubt goes back to the time when cities were the only incorporated municipalities or agencies in a county and it could strictly be said that the territory of the county was unincorporated except for the area within the boundaries of incorporated cities.

■ The Sawyer Act does not manifest a legislative intention to restrict or diminish the scope of the term "territory adjacent thereto" as employed in § 77.020 relating to the extension of the limits of cities of the third class. We are constrained to hold that the term "unincorporated area of land" as used in the Sawyer Act means the territory which is outside the boundaries of incorporated cities.

But the defendants further say that when St. Louis County adopted its home rule charter under § 18, Art. VI, of the Constitution, it became "a body corporate and politic, with all of the powers and authority of a municipal corporation of a local nature pertaining to public health, police and traffic, building construction, and planning and zoning in the part of St. Louis County which was outside of incorporated cities" and, since the area in question is within the municipal sphere of the county, it is not an

unincorporated area and the Sawyer Act is therefore inapplicable. These questions involve the effect of the constitutional provisions upon the legal status of St. Louis County.

Sections 18(a) and 18(c) of Art. VI, bearing directly upon the questions presented, are as follows:

"Section 18(a). Any county having more than 85,000 inhabitants, according to the census of the United States, may frame and adopt and amend a charter for its own government as provided in this article, and upon such adoption shall be a body corporate and politic."

\*　\*　\*　\*　\*　\*

"Section 18(c). The charter may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the county outside incorporated cities; and it may provide, or authorize its governing body to provide, the terms upon which the county shall perform any of the services and functions of any municipality, or political subdivision in the county, except school districts, when accepted by a vote of a majority of the qualified electors voting thereon in the municipality or subdivision, which acceptance may be revoked by like vote."

■ It is undoubtedly true that for some purposes St. Louis County is a municipal corporation performing, inter alia, certain services of a local or municipal nature. Article I, § 1, of the county charter declares it to be a "body corporate and politic" consistent with the provisions of § 18(a), Art. VI, of the Constitution. Section 18(c) granted the county permissive authority to perform four categories of local services in the part of the county outside incorporated cities. These and other similar services authorized by statutory law are being performed by the county. See the St. Louis County Charter, Art. III, sec-

tions as follows: 22(15)—hospitals, sanitariums, institutions and clinics; 22(16)—parks, recreation and conservation; 22(17)—county highways and bridges; 22(19)—the performance of the "services and functions of any municipality or political subdivision in the county, except school districts, when accepted by a vote of a majority of the" qualified electors in such municipality or subdivision; 22(20)—"public health, police and traffic, building construction, and planning and zoning in the part of the County outside incorporated cities, and on such other subjects as may hereafter be authorized by the Constitution or by law"; 22(21)—"the creation of districts in the unincorporated areas of the County within which may be provided fire protection, public water supply, streets, sidewalks, street lighting, sewers, sewage disposal facilities, garbage and refuse collection and disposal, and such kindred facilities as the voters therein by a majority of those voting thereon may approve".

■ Although a county under a home rule charter may furnish certain services of a local or municipal nature in the areas of the county outside of incorporated cities, it continues to be obligated, as a legal subdivision of the state, to perform state functions imposed on a county of its class. Art. VI, § 1, of the Constitution; State on inf. Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, 660. The exercise of "municipal services" is permissive or optional, but the performance of the county or governmental functions is mandatory.

The Constitution is not the sole source of the authority whereby counties may assume the performance of services of a municipal nature. The statutes show a growing tendency to permit counties to perform types of local services formerly considered to be in the sole province of incorporated cities and towns. This is no doubt influenced by the growth of population and the improvement in the means of transportation and communication. Presently the permissive authority made available by statute to first class counties is almost as extensive as the authority of a similar nature conferred by the Constitution upon charter counties.

Characterizing St. Louis County as a "municipal corporation" does not necessarily determine that its land area is incorporated within the meaning of a particular statute. The same word, term or phrase may vary in meaning depending on the time, place and circumstances under which it is used. In Towne v. Eisner, 245 U.S. 418, 38 S.Ct. 158, 159, 62 L.Ed. 372, the Supreme Court speaking through Mr. Justice Holmes stated: "But it is not necessarily true that income means the same thing in the Constitution and the Act. A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

■ "In its strict and primary sense the term 'municipal corporation' applies only to incorporated cities, towns, and villages, having subordinate and local powers of legislation. * * * But in the larger and ordinarily accepted sense the term is applied to any public local corporation, exercising some function of government, and hence includes counties, school districts, townships under township organization, special road districts and drainage districts." State ex rel. Caldwell v. Little River Drainage Dist., 291 Mo. 72, 236 S.W. 15, 16. See also Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65, 68[2]; St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W. 2d 289, 294[12–15]; and McQuillin, Municipal Corporations, 3rd Ed., Vol. I, § 2.03 et seq.

Many public agencies, rendering services of a municipal nature for which a corporate form of organization is provided by law, may properly be included in the category of "municipal corporations" in the broader sense. To those mentioned in the Caldwell case could be added county health departments and hospitals, fire districts and, not-

ably in St. Louis County, the Metropolitan St. Louis Sewer District, "a body corporate, a municipal corporation and a political subdivision of the state" which encompasses both the area in question and the City of Olivette. The territory which these "municipal corporations" occupy does not ipso facto become an incorporated area within the meaning of the annexation statutes.

Under § 18, Art. VI, St. Louis County was incorporated as a county and not as a city. The fact that constitutional provisions permit the incorporated county to render to certain of its inhabitants services of a local or municipal nature does not change its essential status from that of a county. It is not the intent of § 18, Art. VI, to make the legal status of a charter county equivalent to that of an incorporated city. The debates of the constitutional convention to which we have been cited by both sides are consistent with this conclusion.

The constitutional grant of municipal power to St. Louis County is augmented by the considerable permissive legislation of the same kind afforded Missouri counties under present statutes. Even so, a charter county so endowed does not have the potential municipal power bestowed on a third class city by Chapter 77 and other statutes. Despite its corporate form of organization and all its permissive functions of a municipal nature, St. Louis County is not, as a matter of law, tantamount to an incorporated city within the concept of the annexation statutes. Therefore, the area in question is an "unincorporated area" within the meaning of the Sawyer Act. The court erred in holding that the Sawyer Act was not applicable.

Even though it does not dispose of the case as a matter of law, the fact that municipal services are being rendered in the area sought to be annexed should be considered and weighed along with the other evidence in the case in determining the reasonableness of the annexation and the other questions of fact presented in the declaratory judgment action.

The defendants further contend that even if the Sawyer Act is applicable the trial court properly dismissed the petition because the plaintiff failed to sustain the burden of proving the facts necessary for a judgment in its favor under the Act. On the other hand, the city contends this court should render a declaratory judgment authorizing the proposed annexation. The dismissal of plaintiff's petition will be set aside but, in view of the construction we have made and will make of the Sawyer Act, the action of the trial court in sustaining the defendants' motions for a new trial will not be disturbed. Under the circumstances the parties should have an opportunity to retry the case and we will not undertake to render final judgment on the record as it stands.

A further point of difference between the parties is the construction of the requirement of the Sawyer Act that the plaintiff plead and prove: "That such annexation is reasonable and necessary to the proper development of said city." The defendants contend that annexation must be shown to be reasonable as to all interested parties, while the plaintiff asserts that the test of reasonableness goes only to "the proper development of said city." The reasonableness of an annexation by a city has always been held to be a subject of judicial inquiry largely because the inhabitants of the adjacent territory have no part in the selection of the city officers who initiate the annexation proceeding nor a vote in the city election by which it is confirmed. State ex rel. Blair v. Center Creek Mining Co., 262 Mo. 490, 171 S.W. 356, 360[7]. Later cases decided prior to the Sawyer Act are in accord with this ruling. Also see City of Sugar Creek, Mo. v. Standard Oil Co., 8 Cir., 163 F.2d 320. The Sawyer Act does not contemplate an abandonment of this well-established judicial function.

The provision in question embodies two separate but closely related con-

cepts; that is, (a) that the annexation is reasonable, and (b) that the annexation is necessary to the proper development of the city. The plain language of the provision makes evident the legislative intent. To say that the annexation must be "reasonable * * * to the proper development of said city" is confusing and tends to preclude a judicial inquiry into the reasonableness of the annexation from the standpoint of the area to be annexed. Both parties are entitled to the test of reasonableness. City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505, 516[3,4]. To hold otherwise might render the Act vulnerable to an attack as to its constitutionality. See 16A C.J.S. Constitutional Law § 604c, p. 726.

■ The jurisdiction and functions of courts in annexation proceedings is well stated in 16 C.J.S. Constitutional Law § 139, pp. 638–639: "The legislature may not delegate to the courts the power to determine *the conditions* on which certain territory shall be included within, added to, or detached from, a municipal corporation. *Where,* however, *the legislature has prescribed the conditions on which territory may be* originally included in, or *subsequently added to,* or detached from, *a municipality, it may authorize the courts to determine the question of fact whether or not these conditions exist in a particular case and whether the law has been complied with.*" This statement of the law is cited with approval and the cases supporting it are discussed in City of St. Joseph v. Hankinson at 312 S.W.2d 8.

■ The conditions on which territory may be annexed has been prescribed by the general assembly in the basic statutes, such as § 77.020, and in the Sawyer Act which incorporates the remedy and procedure of the Declaratory Judgment Act. In City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, this court held that the general assembly may lawfully delegate to the courts the power to determine whether the conditions exist in a particular case and whether the law has been complied with.

The burden of proof is upon the plaintiff city in a case under the Sawyer Act, and the ordinary rules of evidence in civil actions apply in determining the admissibility of evidence. City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505, 518[14]; City of Creve Coeur v. Patterson, Mo.App., 313 S.W.2d 739, 744[3]; 62 C.J.S. Municipal Corporations § 60, p. 167. The issues of reasonableness and necessity as well as the other fact questions in a Sawyer Act case should be determined in the same manner that such issues are decided in other actions. The courts perform a similar function in reviewing orders of the Public Service Commission which is essentially an agency of the legislature exercising lawmaking powers. Clark v. Austin, 340 Mo. 467, 101 S.W.2d 977[22]; State ex rel. Chicago, Rock Island & Pacific R. Co. v. Public Service Commission, Mo., 312 S.W. 2d 791[1, 9]; State ex rel. Chicago, Rock Island & Pacific Railroad Company v. Public Service Commission, Mo., 335 S.W.2d 182.

■ The Sawyer Act has done much to establish the form of remedy and procedure in annexation cases and to define the ultimate questions of fact which the courts have to decide. Its intent and purpose should be fully developed. The aids or guides developed by the cases before the Sawyer Act are still helpful in arriving at a decision of the ultimate fact questions specified. See State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007, 1022, and State ex inf. Taylor v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, 774. Nevertheless new laws and modern economic and social trends must be taken into consideration and each case must depend on its individual facts and circumstances.

There were 99 incorporated cities in St. Louis County at the time of the trial. Most of them were east of Lindbergh Boulevard. It is obvious that some of them were originally incorporated as a defensive measure to avoid annexation by an adjoining city. Some of them are completely surrounded by

other incorporated cities and have no opportunity to extend their boundaries. There is a great deal of competition between other cities for the unincorporated territory adjoining them. See State ex rel. Industrial Properties, Inc. v. Weinstein, Mo.App., 306 S.W.2d 634, and City of Creve Coeur v. Patterson, Mo.App., 313 S.W.2d 739. It would seem to be in order for the court to consider what the "proper development" of a city is in these circumstances as an element of the issues of necessity and reasonableness. Decentralization has affected both the industry and the people of the metropolitan community. The increase in land values has been phenomenal in St. Louis County but, on the present record, the increase in this area cannot be attributed wholly to its proximity to a particular city.

The legislative trend has been to vest counties with greater authority to perform services of a local or municipal nature. This permissive legislation and the extent to which it is used must be taken into consideration in determining whether the annexation is authorized. The interest of the county as a community must be weighed against the claims of the city because the county's municipal powers are also provided by law and are a part of the public policy of the state. Attention should be given to the needs of the area for municipal services, whether they are adequately cared for and whether they should be supplanted by those of the city.

We have undertaken to indicate the issues and kind of evidence that appear to be of particular interest on a retrial of the case, but we do not in any way undertake to limit the issues or the evidence to be taken or the extent to which the evidence previously taken may, with the approval of the court, be used on resubmission.

The judgment dismissing plaintiff's petition is reversed, but the order sustaining defendants' motions for a new trial is affirmed and the cause is remanded.

All concur.