**CITY OF LEXINGTON, Missouri, Plaintiff-Respondent,**

**v.**

**Basil E. SHEPARD et al., Defendants-Appellants.**

**Nos. 23144, 23145.**

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

J. B. Beavers, Cameron, Ike Skelton, Skelton & Bradley, Lexington, for appellants.

William Aull, III, Aull & Aull, Lexington, for respondent.

BROADDUS, Judge.

This is an action filed by the City of Lexington pursuant to Sect. 71.015 R.S.Mo., V.A.M.S. (1957 Cum.Supp., Laws of 1953, page 309). In said petition the City seeks a declaratory judgment authorizing it to proceed under the laws of this State to annex and bring within its corporate limits certain real estate described in said petition. At the conclusion of the trial the court took the case under advisement and on August 25,

1959, entered judgment in favor of plaintiff. Defendants have appealed.

The learned trial court found the facts to be as follows:

The City of Lexington is a City of 3rd Class organized and existing under the general laws of Missouri. It has a Mayor and Council form of government. On October 14, 1958, Mayor Dankers of Lexington, told the City Clerk to notify the members of the Council of an executive meeting, which was done. Not all members of the Council were present at first and they had a private meeting or caucus in the scale room. Shortly afterwards all eight councilmen representing the four wards appeared and they were notified by the Mayor of the special council meeting to be then held for the purpose of considering and deciding on a proposal to annex land to the City of Lexington. All members were present and participated in the meeting. The Resolution of Annexation was read, discussed and put to a vote on motion being made and seconded. All eight members of the Council were present and Councilmen Johnson, Lankford, Skinner and Stephenson voted "Aye", Councilmen Hilker, Roncelli and Schenewerk "Nay" and Councilman Marchetti was present but did not vote. The Resolution was adopted.

The original minutes of the meeting did not show the recording of the "Ayes" and "Nays" but on *Nunc Pro Tunc* order entered by Honorable Phil H. Cook, Judge of the Circuit Court of Lafayette County, Missouri, the minutes were amended to show the recording of the "Ayes" and "Nays" as above stated.

Lexington is a City of approximately 5,000 population, the County Seat of Lafayette County. It is located on the south bank of the Missouri River and on the River Route of the Missouri Pacific Railroad. It is served by State Highways Nos. 13 and 24. The present area of the City is 2.034 square miles. The total area sought to be annexed is 1.372 square miles, of which .658775 of a square mile is already platted for building or town lots.

The areas sought to be annexed to the City have, for convenience, been designated as areas 1, 2, 3 and 4.

Area No. 1 is composed of .597 of a square mile. It adjoins the City on the South and extends on both sides of Missouri State Highway 13 in a southern direction a short distance beyond the intersection of said Highway with U. S. Highway No. 24. It is known as Green Acres. The area contains approximately 39 residences and several commercial enterprises. All of the land in area No. 1 has been platted as town property by the owners.

Area No. 2 is composed of .580 of a square mile. This area adjoins the City on the south and east. The western boundary of this area is the present eastern corporate limits of the City. U. S. Highway No. 24 is approximately the south and east boundary. Near the north end, the area is crossed by Alternate U. S. Highway No. 24 which is a business route entering the City from the east. The K.C.-Sedalia Branch of the Missouri Pacific Railroad runs in an east and west direction through the middle of the area.

There are approximately 30 residences and several commercial enterprises located in this area. Hackler's and Hensevelt's Subdivisions are located in the western part of the area and immediately east of the present City's corporate limits of the Leawood Addition. Luehrman's subdivision is located in the northwestern part of Area No. 2 and immediately east of the present corporate limits. V.F.W. Subdivision composing 10 acres is located in the eastern part of Area No. 2.

In Area No. 2 is located farm land owned by defendants Raedecker, Fetter and Wilcoxon. Defendant Fetter owns 40 acres located immediately to the north of the V.F.W. Subdivision and north of U. S. Highway No. 24. He has about 25 acres in the area. He is a construction worker

and is employed by the Bennett Construction Company and works on a 40-hour-week basis. He supplements his income by his farming operations. He feeds some cattle and markets about 150 hogs a year.

Defendant Raedecker owns about 48 acres of land in Area No. 2 and his land lies east of the V.F.W. Subdivision. His principal occupation is that of teaching at Wentworth Military Academy at Lexington, Missouri. He likewise supplements his income by farming. He presently has 10 acres in oats and the rest in grass and is feeding 30 head of cattle and 40 head of sheep.

Defendant Wilcoxon has 41 acres in Area No. 2 and his land is located generally along both sides of the K.C.-Sedalia Branch of Missouri Pacific R. R. Company which runs through this area. His principal occupation is that of Veterinarian, although he handles a considerable number of mares, colts and cows and raises a portion of their feed.

Defendant McFadden owns a 244 acre farm and is engaged in general farming. Of his land, about 5 acres is located in Area No. 1, known as Green Acres. Sometime before the passing of the Resolution in question, he signed an application to put his farm into the Village of Green Acres and almost succeeded in getting the village incorporated. His land has been platted as town property. Defendant Shepard lives in Area No. 1 and his land was also platted.

Area No. 3 is composed of .036 of a square mile and is north and east of the City and is known as Country Club. There are two subdivisions in this area—Country Club Subdivision and Smockview Subdivision and there are several residences in this area.

Area No. 4 is composed of .159 of a square mile and is located immediately north of the City and is generally known as "The Point". It includes that area from the northern city limits to the river, and the area contains several residences.

The real estate of Lexington is valued for tax purposes at approximately $3,140,-000. The land in the area proposed to be annexed is valued at approximately $218,-000. At present tax rate, the increased revenue from that real estate would be about $5,000 which would be less than required for furnishing needed services by the City. The City furnishs free garbage collection. It has its own fire department, street department and each department is adequately equipped. All of the streets are either paved with brick or concrete. The City has an Airport, Park System, and a municipal hospital of 30 beds. Adequate lighting and water facilities are available to the City. * * *

The court finds that the City cannot expand to the northwest on account of the river as a barrier; to the west the terrain is rough and unsuitable for expansion; the only directions in which the City can expand are the directions in which the City is presently growing, that is to the south, east and north. In Area No. 1, there are already approximately 40 residences and several commercial enterprises. Highways No. 13 and No. 24 intersect the area and make this area more attractive for commercial development. All the land in this area has been platted into town lots.

Area No. 3 is on the north and east and contains Country Club Subdivision and Smockview Subdivision and several residences. Area No. 4 known as "The Point" is between the northern city limits and the Missouri River. There are several residences in this area. Both of these areas are small.

Area No. 2 covers .58 of a square mile and adjoins the City on the south and east. There are four subdivisions in this area and approximately 29 residences and several commercial enterprises located therein. Highways No. 13 and No. 24 and the K.C.-Sedalia Branch of Missouri Pacific R. R. intersect the area, and furnish good opportunity for commercial development therein.

There is some farm land in this area belonging to persons who earn their chief livelihood at other businesses, some being in Lexington.

Most of the residents of the areas proposed to be annexed are in business or work in Lexington and enjoy many services now at the expense of the City. The natural growth of the City appears to be in the directions of the proposed areas and, as a matter of fact, most of the present residents of the areas are overflow beyond the present corporate limits of the City.

The transcript reflects that the above findings are correct. It also discloses that all of the land in the proposed annexed areas and in the present corporate limits of Lexington is in the same school district; that the people in the areas proposed to be annexed have in the past called on the City for Police assistance and fire protection, and the City has provided both; that there is no new area within the present city limits of Lexington which could be subdivided and there are not too many good building lots remaining in the City; that water mains are present in the proposed annexed areas, and fire plugs can be readily installed. In short, the City has the present ability to furnish municipal facilities to all the proposed annexed areas.

■ The law governing the instant case is well settled. It is stated as follows in the recent case of City of St. Joseph v. Hankinson, Mo.Sup., 312 S.W.2d 4, 8:

" * * * It has been the universal rule that the court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of 'reasonableness' is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, Banc, 360 Mo. 374, 228 S.W.2d 762; Faris v. City of Caruthersville, Mo.App., 301 S.W.2d 63; State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393; Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236. The function of our courts, historically, has been merely to determine, in the light of these principles, whether the exercise of the legislative powers has been arbitrary and clearly unreasonable. (See the cases just cited.) Only to this extent do our courts consider the reasonableness of an annexation."

■ To the same effect see the cases of City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505, and Waller v. City of Macon, Mo.App., 277 S.W.2d 886, both by this court.. Under the facts above set out how can it be said that reasonable men would not differ as to the necessity of the annexation? And, say the cases, if there be substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the City Council and *not for the courts*. We are in accord with the holding of the trial court "that the plaintiff has sustained its burden by proving that the reasonableness of the proposed annexation was at least a debatable question upon which the City Council might exercise its discretion, and that this discretion has not been arbitrarily exercised."

■ Defendants also contend that the Resolution passed by the City Council at the special meeting held on October 14, 1958, is invalid. The contention is without merit. Even if a recording of "Ayes" and "Nays" is necessary upon the passage of a resolution, the record was properly corrected to show the votes under Judge Cook's *nunc pro tunc* order. The case upon which the defendants rely (Steiger v. City of Ste. Genevieve, 235 Mo.App. 579, 141 S.W.2d 233, does not aid them. That case holds that the records of the municipal council could not be amended ex parte by the council where parties relied thereon and

employed counsel to bring suit. But it also held (loc.cit. 237) that the correction could have been made on application to and a hearing before the court, notwithstanding the pending suit.

The judgment is affirmed.

All concur.