**CITY OF WOODSON TERRACE, a municipal corporation, Plaintiff-Respondent,**

**v.**

**Harry HERKLOTZ, Adela Herklotz, Harriet Herklotz, John Vasquez, Dorothy Vasquez, Helen Mae Wahler, and Ruth Rosalie Kinney, individually and as representatives of a class, Defendants-Appellants,**

**Village of Edmundson, Defendant-Intervenor.**

No. 30712.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

---

Robert Nagel Jones, St. Louis, for appellants.

John B. Gray, Clayton, for respondent.

Hale W. Brown, Kirkwood, for intervenor.

PAUL VAN OSDOL, Special Commissioner.

In this action, plaintiff City of Woodson Terrace, a city of the fourth class in St. Louis County, seeks the remedy of a declaratory judgment in connection with and in judicial confirmation of its proposal to annex forty-four acres of land, now used for agriculture, under the statute commonly known as the Sawyer Act, § 71.015 RSMo 1959, V.A.M.S. The owners of the land who reside thereon, individually and as representatives of a class, were made parties defendant. They resist the annexation. And, on motion, the Village of Edmundson was permitted to intervene as a party defendant. A trial was had without a jury, and a declaratory judgment was rendered authorizing the annexation. Defendants, other than the Village of Edmundson, have appealed.

The statutory authority for the extention of the boundaries of a city of the fourth class is to be found in § 79.020 RSMo 1959, V.A.M.S., which provides that the "mayor and board of aldermen of such city * * * with the consent of a majority of the legal voters of such city * * * shall have power to extend the limits of the city over territory adjacent thereto * * *." The conditions on which territories may be annexed to cities are provided in basic statutes such as § 79.020, supra, and in the Sawyer Act which incorporates the remedy and procedure of the Declaratory Judgment Act.

■ In an action under the Sawyer Act, the petition must state facts showing the

area to be annexed; that such annexation "is reasonable and necessary to the proper development of said city;" and the ability of the city to furnish the normal municipal services of said city to the unincorporated area within a reasonable time after annexation is to be effective. The clause—"is reasonable and necessary to the proper development of said city"—embodies two separate but closely related concepts. They are (a) that the annexation is reasonable and (b) that the annexation is necessary to the proper development of the city. "Both parties are entitled to the test of reasonableness", City of Olivette v. Graeler, Mo., 338 S.W.2d 827, at loc. cit. page 837.

While the aids or guides developed by the courts before the Sawyer Act are still helpful in arriving at a decision of the questions of fact specified, (see State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007; and State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762) nevertheless new laws and modern economic and social trends must be taken into consideration, and each case must be decided on its individual facts and circumstances; and in determining the essential questions of fact supporting the propriety or legality of the annexation, a court does not in any sense substitute its judgment or discretion for that of the legislative body of the city. If the evidence is such that reasonable men would differ as to the reasonableness and necessity of the annexation, then the decision of those questions is for the legislative body of the city and not for the courts. If the effect of the evidence is fairly debatable upon these matters, then either way the questions might be decided would not be unreasonable, City of Olivette v. Graeler, supra; City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4; City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505.

Plaintiff city was incorporated as a village in 1946 and its limits then embraced a comparatively small irregular rectangular area in the southerly part of the City's present confines. In 1947, the population of the Village was seven hundred forty. The Village became a city of the fourth class in 1954, and its boundaries variously have been so extended that its present limits encompass an area several times that of the original Village. It was said that now (at the time of trial) City's population is between seven and eight thousand. In 1947, the assessed valuation of property subject to taxation by the then Village was $456,350—in 1959 the assessed valuation of property was $5,330,072. City's tax rate in 1959 was forty-seven cents, and it had a balance of $23,599 in its treasury as of April 30, 1960. City has no bonded indebtedness.

A church was built in the then Village of Woodson Terrace in 1953, a school in City in 1955, and a city hall and community building in 1957. The last-mentioned improvement provides adequate offices for City's officers; and supplies a meeting place for unofficial civic organizations as well as a place for the social meetings of teen-agers sponsored by the local "Teen-Town" organization.

City has twelve trained police officers, of whom three are employed full-time. A City police officer rides City's streets twice around the clock seven days a week. City has and maintains a station-wagon ambulance, a motorcycle, first aid supplies, a stretcher, and a resuscitator. City provides free tri-weekly rubbish and garbage pick-up service. In addition to its elective executive and legislative officers, City has a clerk, a treasurer, street department staff, a planning and zoning commission, a board of adjustment, a park committee, a building commissioner, and a plumbing inspector.

Other than defendants' forty-four acre tract, there is no land, adjacent to City, that is not incorporated in other cities, town or villages. A witness said defendants' land "is bounded on the north by the City of Woodson Terrace; on the east and south

by (the City of) Woodson Terrace; on the west by the Village of Edmundson." However, this is not entirely accurate. The boundary of the Village of Edmundson extends eastwardly along an approximate one-fourth of the north line of defendants' property.

In 1951, there was no commercial building in the Village, but now there is considerable commercial development principally centered on and along segments of City's streets—Woodson Road, Guthrie and Bataan. The northerly line of City lies along the south line of "new Highway 70"—the Mark Twain, or Natural Bridge. A tract of land of about twenty-five acres, which we infer belongs to H. W. and Elizabeth Maurer, lies south of the highway and north of defendants' land. The Maurer tract (incorporated in the most northerly part of City) except for the Maurer residence and a commercial "greenhouse operation" thereon is undeveloped. A witness for City explained that the Maurer property is not specially desirable for residential development because of its proximity to the highway and Lambert Municipal Airport to the northward thereof. For like reasons, an undeveloped tract of some fifteen acres lying along the south side of the highway in the more easterly part of City is not desirable for residential use. A third tract of eight or ten acres is zoned commercial. The three tracts severally are zoned either commercial or light industrial.

City's mayor testified that City is predominantly residential—comparatively small single-family dwellings—generally of one-story frame construction. In recent years some families have "moved out" of City. This was because "their homes had gotten too small for the size of their family and there was not development in this area with enough living space to meet their requirements." The mayor spoke of the factors prompting the legislative body of City in making the move to annex defendants' land. One factor or reason was to "square off" City's boundary. Another was to have some development for larger living space, as well as to control the development of the area. And he said, "It would be much easier to police the entire City and govern our health regulations by having it (defendants' land) in the City * * *." He also mentioned a "much needed" park, a site for which a portion of defendants' land could be used. The mayor was of the opinion that City has the ability to provide the area with the normal municipal services of City immediately upon or within a reasonable time after the effective date of an annexation, and to expand such facilities or services commensurately with the future development of the area.

As we have said, defendants' property substantially is surrounded on its north, east and south sides by City. The east line of defendants' land abuts the west line of Woodson Road which passes through the approximate (somewhat to the eastward of the) center of City. Calvert Avenue, a north-south street in City, "dead-ends" at the south line of plaintiff's land. But, as indicated, defendants' land is now and has been for years used for farming. A real-estate appraiser, witness for City, expressed the opinion that defendants' land used for agricultural purposes is worth six hundred dollars an acre. If utilized in its highest and best use, the land would be worth six thousand dollars an acre. Its best use would be "residential subdivision", and possibly some commercial value would accrue to the Woodson Road frontage.

Defendants live on the southerly portion of their land in two substantial and attractive dwellings, one of frame and the other of brick construction. There are barns, sheds and tool sheds. Defendants have their own north-south private lane along or near the west side of the Maurer land. The lane provides passage to and from Natural Bridge. They have their own road-grading equipment and supply their own road-surfacing materials. They have their own plumbing facilities, modern plumbing fixtures and septic tanks with leaches. Should they need police protection, they "would probably call the St. Louis County

Police Department." It was said that St. Louis County has one hundred sixty-eight police officers. Defendants do not need any rubbish and garbage pick-up. They feed their garbage to their pigs, and haul their rubbish "to the other farm or some other place."

Before discussing the effect of the evidence in supporting the reasonableness and necessity of the annexation, it may be well to dispose of defendants' contention herein that St. Louis County should have been made a party defendant, and defendants' further and related contention that the trial court's judgment approving the annexation was erroneous for the asserted reasons that City had not introduced evidence tending to show that the welfare of the "County as a community authorized this annexation", and that the trial court made no specific finding relating to the fact of the interest or welfare of the "County as a community." Defendants remind us that the Supreme Court of Missouri said in the Olivette case (City of Olivette v. Graeler, Mo., 338 S.W.2d 827) at local citation page 838,

> "The legislative trend has been to vest counties with greater authority to perform services of a local or municipal nature. This permissive legislation and the extent to which it is used must be taken into consideration in determining whether the annexation is authorized. The interest of the county as a community must be weighed against the claims of the city because the county's municipal powers are also provided by law and are a part of the public policy of the state. Attention should be given to the needs of the area for municipal services, whether they are adequately cared for and whether they should be supplanted by those of the city."

■ It is true that City did not specifically undertake to prove that the interest of the County as a community "authorized" this annexation, but it was stipulated by the parties that defendants' property "is pres- ently zoned 7500 square feet, residential under the St. Louis County Zoning Ordinance," and much was said concerning the comparative number of municipal services rendered the area by the County and those services which, upon annexation, can be rendered by the City. The record justifies the inference that County provides services of a municipal or local character generally the same as presently can be provided by City upon annexation, and the inference is that County now provides some services, municipal or local in character, which are not now made available by City. But the record does not support defendants' assertion that such services as are rendered by City are, or will be, mediocre and inferior to those now provided by County. Although the trial court made no reference to the interest or welfare of the whole County community in the trial court's findings of fact, we shall not assume the trial court did not take this factor into account in considering the whole of the evidence on the issues of reasonableness and necessity. Rather do we deem that the trial court considered, weighed and balanced the stated factor together with the other facts supporting City's claim for annexation and determined its relative weight in accordance with the result reached when considering the whole of the evidence introduced in this case, § 510.-310, subd. 2, R.S.Mo.1959, V.A.M.S. This, even though the trial court's judgment was rendered before the decision of the Olivette case. As to the contention of a defect of parties, we have no doubt it would not have been improper to join County or to permit its intervention if desired, as a party defendant, and so in this sense County could be said to be a proper party; but the Sawyer Act itself, in effect, specifies the necessary parties defendant and the nature of the action provided. The Act provides that the action "shall be a class action against the inhabitants of such unincorporated area under the provisions of Section 507.070 R.S. Mo. [1959]."

We have noted that defendants in their brief particularly have noticed the state-

ment we have quoted above from the Olivette case, "Both parties are entitled to the test of reasonableness", and argue somewhat as if they are entitled to the test of reasonableness of the annexation of their land solely from the standpoint of asserted absence of benefit to their land considered as a farm, and as a farm apart or isolated from its geographical location and setting contiguous to and practically enclosed on three sides by City.

It seems clear to us that the Supreme Court of Missouri was saying that annexation under the Sawyer Act (1) must be necessary to the development of a plaintiff city. This is a standard or criterion that could apply only to the city and not to the residents of the area sought to be annexed; and (2) the annexation under the Act must be "reasonable" which is a concept that applies both to the city and the residents of the area sought to be annexed. In other words, the annexation cannot be reasonable only from the standpoint of the city and wholly unreasonable from the standpoint of the residents of the area, or vice versa. For example, it certainly would not be reasonable, especially from the standpoint of the residents of the area sought to be annexed, if the only reason advanced for the annexation of an area was that a plaintiff city wanted it for the taxes it would yield. See City of Creve Coeur v. Patterson, Mo.App., 313 S.W.2d 739. It is also made apparent by the Olivette case that the Sawyer Act was not intended merely to codify the existing substantive law of annexation, neither is it purely procedural, it would seem. It recognizes and projects the substantive incidence of the reasonable protection of the area sought to be annexed, as well as the interests and welfare of other areas (for instance, in our case, St. Louis County) which might materially be affected by an annexation, and all with a regard for new legislation and modern economic and social trends. City of Olivette v. Graeler, supra. See also, generally, Washington Law Quarterly, 1961, pp. 159–168.

Also, in making the statement that both of the parties are entitled to the test of reasonableness, the Supreme Court of Missouri was recognizing the fundamental background of constitutional essentiality of a reasonable factual basis for an annexation for it to be valid. Since the annexation statutes do not give those whose property is being annexed any voice or vote on the annexation, they do have the right, through the courts, to a judicial review of the claimed factual basis supporting the annexation, City of Fulton v. Dawson, supra; City of Olivette v. Graeler, supra.

In reviewing the evidence set out supra, we have noted that throughout its history City consistently has enjoyed development and growth, and to the extent that at the present time it has little or no land within its corporate limits to provide space for single-family or multiple dwellings except for three areas within City which areas are deemed not entirely desirable for residential development and use. To be sure, there is no evidentiary demonstration that City is in immediate need for *all* of defendants' land for the proper development of City, but in trying this case anew and giving due regard for the trial court's findings, we have the opinion the evidence shows the need of some of the defendants' land now, and here we add that it has been said that annexations should be infrequent, and consequently a city may to a reasonable extent look to its future needs in planning and seeking an extension of its limits, City of St. Joseph v. Hankinson, supra. In view of the shown location of defendants' unincorporated land substantially "right in" the northwesterly part of City and constituting an area over which City may not now exercise the functions of city government, it is reasonable, it seems to us, that City should have a recognized interest in squaring up its boundaries and that this factor importantly helps add up and is to be considered, together with the other factors supporting the reasonableness of the annexation proposal. Annexation would tend to make "the city limits regular," and would facilitate the

execution of City's police and health regulations in and throughout the whole "squared-up" area, we think. We are not impressed that the "on the spot," "all over" regulations —police and health, as well as administration, including zoning—of the whole of the area of City, including defendants' land upon annexation, by City's staff and municipal services would, in this case, be inimical to the interest and welfare of St. Louis County considered as a whole community. We point out that defendants' land is a forty-four acre unincorporated "island" entirely surrounded by incorporated lands and more or less remote from other unincorporated areas of the County. In short, defendants' land is so situated as to be adapted to urban purposes, and as to be necessary or convenient to the proper exercise of the City government, Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236; Mauzy v. City of Pagedale, Mo.App., 260 S.W.2d 860.

■ The mere fact that defendants' land is being used for agriculture and that it has a value as such does not necessarily and automatically prevent its annexation, although such use is one of numerous factors, and a highly important one, to be considered as to the reasonableness of the annexation, Faris v. City of Caruthersville, Mo.App., 301 S.W.2d 63; City of St. Joseph v. Hankinson, supra. And there is authority for the view that land, though used for agriculture, may lose its character as such when it attains a value far in excess of its real agriculture value, and thus becomes subject to annexation. State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393; City of St. Joseph v. Hankinson, supra. Furthermore and in this connection, a defendant in the case testified that the Herklotz farm originally comprised adjacent lands, owned and leased, south, east and "west of us." In the last ten years these several tracts aggregating approximately seventy-five acres were sold to a purchaser who "subdivided it" and now it has been completely developed. Upon being asked if defendants' forty-four acre tract, involved herein, is "held for sale as town lots," the witness said "Not at the present time." This testimony reasonably supports the inference that defendants' tract involved herein, although now used for agriculture, is subject to being brought on the market and sold as city property when the land attains a value corresponding to the views of defendants, and the inference justifies the application of one of the tests which may be considered on the question of reasonableness of an annexation proposal, State ex inf. Taylor ex rel. Kansas City v. North Kansas City, supra, 360 Mo. 374, 228 S.W.2d 762, at loc. cit. page 774.

We are unable to follow the tenor of defendants' argument that considered from the standpoint of their land the annexation is unreasonable, unnecessary and oppressive.

■ We hold that City has sustained its burden of proving that City's annexation proposal is reasonable and necessary to the proper development of City.

■ We further note the evidence shows that City's financial position is sound, and there is this, and another evidentiary ground, particularly the testimony of the mayor, reasonably supporting the trial court's finding and our conclusion that City has the ability to provide the unincorporated area with City's normal municipal services within a reasonable time after annexation.

The trial court's declaratory judgment authorizing the annexation should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of VAN OSDOL, Special Commissioner, is adopted as the opinion of the court. The trial court's declaratory judgment authorizing the annexation is therefore affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.