CITY OF ST. ANN, Plaintiff-Appellant,

v.

Lewis BUSCHARD et al., Defendants-Respondents.

No. 30916.

St. Louis Court of Appeals.

Missouri.

April 17, 1962.

Motion for Rehearing or for Transfer to Supreme Court Denied May 15, 1962.

William R. Dorsey, Clayton, for appellant.

Paul Taub, Overland, for respondents.

BRADY, Commissioner.

The appellant, hereinafter referred to as the city, is a city of the fourth class in St. Louis County, and seeks a declaratory judgment and judicial confirmation of its proposal to annex over 450 adjacent acres of land, hereinafter referred to as the proposed area, in a proceeding brought under the statute commonly known as the Sawyer Act, Section 71.015 RSMo 1959, V.A.M.S. The respondents, hereinafter referred to as the defendants, are nine of the landowners in this proposed area, and individually and as representatives of a class were made parties defendant. The trial court found against the city, and upon its after trial motions being denied by the trial court, the city has presented its timely appeal to this court. Trial began on October 5, 1959, and the trial court's judgment was entered in January of 1961, the trial court stating that it had held up entering its judgment to have the benefit of the decision in City of Olivette v. Graeler, Mo., 338 S.W.2d 827, an opinion dated September 12, 1960. The transcript in the instant case was filed in May of 1961 and the case heard by this court during the docket for November. At that time, pursuant to the rules of this court, the defendants' alternative motions to dismiss the appeal or to strike part of the appellant's brief were taken with the case. These motions are overruled.

The petitioner alleged annexation to be necessary and reasonable for the proper development of said city, because the area proposed to be annexed lies in the path of the development and extension of the residential part of the city; because the proposed area is an extension to the present residential and commercial area of the city; because " * * * It will be to the best interest of the entire community, consisting of the present City and the area proposed to be annexed, to bring the development of the unincorporated area under the jurisdiction of the City and under its zoning and building regulations"; because incorporated municipalities bound the city to the north, east and south, leaving the only direction available for expansion to the west; because the proposed area is the only unincorporated area adjacent to the city's present western limits; because the proposed area contains several large tracts of undeveloped land which would provide for the growth and extension of the residential, commercial, and industrial development of the city; and because a large portion of the proposed area has been subdivided for residential purposes. Petitioner further alleged that the city is able to furnish to the unincorporated area municipal services within a reasonable time after annexation.

The answer admitted that the defendants were inhabitants of the proposed area, that petitioner's action was brought under the provisions of § 71.015, supra, and that the area to be annexed and described in the petition lies to the south and west and is adjacent to the city, but the answer denied each and every other allegation. As an affirmative matter the defendants alleged that the proposed area was not unincorporated, but " * * * is incorporated within the municipal County of St. Louis * * *." The answer also set up an affirmative defense that the proposed area is actually incorporated into the Town of Bridgeton and further alleged that the petition fails to state a claim upon which relief can be granted giving as one of the reasons therefor that the petition fails to meet the requirements for the maintenance of a class action.

■ The transcript is exceedingly long, and as usual in annexation proceedings, the evidence covered a wide range. Also, as usual in such proceedings, the case was hotly contested and unnecessary exchanges between counsel add greatly to the transcript's length. It would serve no useful purpose and would extend the length of this opinion beyond reasonable limits to detail all of the evidence. We review this case de novo, reaching our own conclusions with respect to the law and the facts, but granting due deference to the findings of the trial court where the credibility of witnesses is involved, Civil Rules 87.11 and 73.01(d), V.A. M.R. Cases cited by the parties are important as general guides, but each case of this nature must rest upon its own facts, City of Olivette v. Graeler, Mo., 338 S.W.2d 827 at loc. cit. [2], page 837. In consideration of this appeal under the rules of review as stated above, we have carefully weighed all the matters contained in the transcript and since the findings of fact made by the trial court are supported by the evidence it will be unnecessary to restate the evidence in summary form in this opinion. Especially is this so as the appellant does not attack the trial court's findings of fact but urges as prejudicial error the conclusions of law announced by the trial court based upon its findings of fact.

With reference to the area which the city seeks to annex, the trial court found that it comprised between 400 and 450 acres, containing 850 to 875 houses, 20 commercial establishments, 55 vacant lots, and has improved streets, 20 of which are hardtop, and 12, gravel and oil. It further found that this area is within St. Louis County, that St. Louis County provides street and highway maintenance, zoning, building inspection, plumbing inspection, electrical inspection, police protection and a health department; that the proposed area is provided with such utilities as water, electricity and gas, has garbage collection by contract between a private person or company offering such service and the householder; that this area lies within incorporated fire districts and school districts which also serve the city; and that within the area a number of subdivision developments are " * * * being carried on and have been carried on by developers who also developed in the * * *" city; and that the proposed area lies within the Metropolitan Sewer District.

With reference to the city, the court found that its population is approximately 13,000, that it comprises some 1,300 acres containing approximately 1,300 houses; that " * * * the development of the petitioner municipality has been such that there is but approximately sixteen acres in two separate areas available for further extension and development"; that the city's financial position " * * * has been stable with sufficient tax yield to meet its obligations with an ample surplus on hand * * *"; that within the city's present corporate limits are three parks of 22 acres, 6 acres, and 1½ acres, respectively, and that the city provides " * * * certain counselor service * *", maintains the playgrounds and ball fields in these parks, spending $14,000 for that purpose in 1958; that the city has granted a franchise to the St. Louis County Water Company to provide water; that it has an arrangement with a private contractor who furnishes garbage and refuse collection; that the city has a building regulation requiring lots to be at least 6,000 square feet with a "30 foot property line", and only single family dwellings or duplexes can be constructed; that there is a Board of Adjustment; that assessments are made by the County of St. Louis and in 1959 were "$10,-579,550 and on personal property $3,261,-320"; that the city has a health commissioner on a part-time basis; that the city maintains a city hall and two garages; and that the elected officials of the city consist of the mayor, the aldermen and a police chief. The trial court further found that the streets of the city are mostly of concrete, were built by the original developers; that while the city has built no new streets it has provided repair and maintenance for which in 1958 it spent $20,919.13 of which $13,284.-36 came from funds supplied by St. Louis

County; that the city has 5 regular employees with 3 part-time employees who work only during certain times of the year; that there is a city engineer; that the police force consists of 3 full-time officers in addition to the chief, and 15 part-time officers; that " * * * Certain police services are provided under contract with the County of St. Louis for calls and radio communication * * * "; and that the city raises revenue in addition to the real estate and personal property taxes from a merchants' license, a gasoline tax of one cent a gallon, a $3 per vehicle wheel tax, liquor permit tax·and dog licenses. The city is also served by the Metropolitan Sewer District.

Section 71.015 RSMo 1959, V.A.M.S., the so-called "Sawyer Act", provides that the petition in an action brought under its provisions shall state facts showing (1) the area to be annexed; (2) "That such annexation is reasonable and necessary to the proper development of said city;" and (3) the ability of the city to furnish normal municipal services of the city to the annexed area within a reasonable time after annexation. This section also provides that the action to be brought thereunder shall be a class action under the provisions of Section 507.070 RS Mo 1959, V.A.M.S.

█ As to the first requirement of § 71.015, supra, the defendants' position was that the proposed area was not unincorporated land. In City of Olivette v. Graeler, Mo.App., 329 S.W.2d 275, this court held that a finding that the proposed area was unincorporated land was jurisdictional. The defendants urge that any area lying outside of the present city limits of the incorporated municipalities in St. Louis County is incorporated in the County of St. Louis. This was the theory presented by the defendants in the City of Olivette v. Graeler, Mo.App., 329 S.W.2d 275, and which, because of the constitutional questions properly presented in the consideration of that theory, resulted in the transfer of that case by this court to the Supreme Court. That matter has now been resolved, and the defendants' conten-

tion in this regard has no merit, City of Olivette v. Graeler, Mo., 338 S.W.2d 827. But the city contends that since the opinion in the Olivette case was handed down some eleven and a half months after the instant case was tried, and since in the city's view of the Olivette case, "The Supreme Court apparently broadened the scope of review * * * " to provide for a comparison of the city's services as weighed against the same services when performed in the proposed area by the county, the instant case should be reversed and remanded so that the city can present its evidence in the light of this new requirement. The transcript discloses that in fact such evidence was offered and is now before us. For example, the Superintendent of the County Police Department gave extensive testimony covering the facilities of that department, the training of his men, the area they cover, and similar matters. He was cross-examined at length and in particular with regard to the number of men he had in this particular area, and counsel specifically asked him, "In your opinion, is that adequate police protection for that area?" The city also inquired as to the police cars required to cover the area and pressed the question of adequacy to the point where the superintendent admitted, "We do not have sufficient cars or sufficient manpower", and in effect testified that if any area was taken into an incorporated city in the county, it would result in better protection for other areas, as " * * * it is a basic fact that the more men you have to patrol a smaller area the better you can cover the area." The director of sanitary engineering also testified that his department served the proposed area. Upon cross-examination, this witness was extensively questioned as to the number of men he had in the department, their training, how many restaurants they inspect, how often, and the procedure followed upon a recommendation by the inspector. Evidence as to the competency of the city's department was also introduced. Moreover, the county highway engineer testified as to the amount the county spent on maintenance in the proposed

area, how often the streets and roads in the area are inspected, and other similar matters and was cross-examined at length regarding the services performed in the proposed area by his department of the county government. There was evidence as to the existence of a county building inspection department, planning commission, health department, hospital department, and legal staff. The planning director testified concerning the operations and services of his office, as did the deputy zoning enforcement officer, who was cross-examined on the work load of his staff. There was other similar evidence from the standpoint of both city and county services that need not be further stated here. We do not rule the question of whether the city's statement regarding the effect of the opinion in City of Olivette v. Graeler, Mo., supra, is accurate for the reason this record clearly shows that evidence was in fact adduced upon the issue of the comparison of the services offered to be extended to the proposed area by the city and those services presently afforded the proposed area by the county. The door to the admission of all such evidence was thereby opened and not only is there sufficient evidence now in the record from which to determine the issue, but the parties cannot now be heard to complain that they did not then avail themselves of their opportunity to present all the evidence on the issue.

The second reason the defendants contended that the proposed area was not unincorporated land as required by § 71.015, supra, was because at least a part thereof was the subject of annexation proceedings instituted by the Town of Bridgeton. As to this contention, the trial court found " * * * that said incorporation was not pleaded * * *" but paragraph 4 of the defendants' answer states that " * * * The said described area is incorporated into the Town of Bridgeton and is not unincorporated area." It was pleaded.

The transcript discloses that Bridgeton passed several ordinances dealing with annexation of at least a part of the proposed area. Just exactly what portion of the proposed area was included cannot be ascertained from the exhibits filed, nor from the transcript. Counsel for both parties repeatedly failed to refer to the exhibit upon which the witnesses traced out the boundary covered by Bridgeton's ordinances of annexation. The tracing was done with the finger, and so there is no marking on any of the exhibits to be of assistance. Moreover, the maps filed as exhibits do not sufficiently detail the area to allow one reading the Bridgeton ordinances from the transcript to translate the boundaries as therein stated to the maps filed as exhibits and thus exactly determine the area described in the ordinance. It further appears from the transcript that an action was filed by the City of St. Ann in the Circuit Court of St. Louis County to contest the annexation by Bridgeton of that portion of the area covered by Bridgeton's annexation ordinance which lies within the proposed area which the City of St. Ann here seeks to annex. After the filing of that action by the City of St. Ann, Bridgeton passed Ordinance No. 305 which recited the filing of the action in the circuit court, and immediately thereafter stated:

"WHEREAS, the City of St. Ann and The Inhabitants of the Town of Bridgeton wish to compromise and settle such litigation, and in so doing the Town will relinquish its rights to a portion of the area annexed by and described in its Ordinances numbered 267 and 277 * * *."

This clause of the ordinance was then followed by the provision,

" * * * That the area set out and described in Ordinances No. 267 and No. 277 be modified and amended by changing the legal description to read as follows: * * *."

The transcript further discloses that the deputy town clerk of the Town of Bridgeton then was asked this question: "None of the area within the red line was included in the Town of Bridgeton by this ordinance?"

and she answered that it was not. Again, what area, within what red line, on what exhibit, is not stated, nor are there earlier references to the exhibit referred to in the transcript, but the map exhibits filed show that the proposed area is outlined in red, and it is a fair inference that the question meant none of the proposed area. The ordinance then stated:

"Section 2. That the Legal Counsel representing the Board of Trustees and The Town be authorized and directed to cause to be entered up a Consent Decree in Cause numbered 219,052, entitled 'State ex rel Dalton, etc., v. Town of Bridgeton' which will modify the extension of the Town's boundaries in accordance with the legal description set out in Section 1 hereof."

It would seem from this evidence that the Town of Bridgeton and the city have no present conflict as to annexation of any portion of the proposed area, yet this matter was hotly contested at the trial, and certainly remained in the case to the point where the trial court felt compelled to rule upon that which it previously held as not pleaded. The trial court made its declaration of law that " * * * in point of time the ordinances in reference thereto came after the initial ordinance of the plaintiff municipality." This is an adoption of the prior time doctrine. The city's counsel urged this doctrine as applicable, relying upon State ex rel. Industrial Properties, Inc. v. Weinstein, Mo.App., 306 S.W.2d 634. That case specifically holds the prior time doctrine applicable (see 306 S.W.2d at loc. cit. [3–5], pp. 636, 637) only where two public bodies contending for the same area have completed all steps required by statute to acquire territory, including the entry of the declaratory judgment, for which § 71.015, supra, provides. All of the municipalities there involved were admittedly subject to the Sawyer Act. In the instant case, the parties have tacitly agreed that the provisions of § 71.015, supra, are not applicable to the Town of Bridgeton, incorporated under a special act of the legislature in 1843, and

operating under the provisions of Chapter 81 RSMo 1959, V.A.M.S., the special annexation statute being Section 81.080 RSMo 1959, V.A.M.S. In its brief the city states, "This Court can take judicial notice of the statutes governing annexation by special charter towns (Sec. 81.080, RSMo 1959), which does not require judicial review of Bridgeton's action, its compliance with the Sawyer Act, or a vote of the citizens of Bridgeton before it may proceed with the annexation. The passage of the Bridgeton ordinance is sufficient to place the annexed area within the corporate limits of the special charter town, known as the Inhabitants of the Town of Bridgeton, unless the City of St. Ann is successful in this action." But regardless of whether §71.-015, supra, is applicable to Bridgeton or not, the doctrine of prior time is of no assistance to St. Ann because, as specifically held in State ex rel. Industrial Properties, Inc. v. Weinstein, Mo.App., supra, not even the City of St. Ann, to which § 71.015 is applicable, has completed all the steps required of it by § 71.015, supra, in that the declaratory judgment which it herein seeks had not been entered.

█ As previously stated herein, in City of Olivette v. Graeler, Mo.App., supra, this court held that a finding that the proposed area was unincorporated land was jurisdictional, and this ruling was affirmed by the Supreme Court upon transfer of that case. See City of Olivette v. Graeler, Mo., supra. Obviously at least a portion of the proposed area was incorporated within Bridgeton unless Ordinance No. 305 is valid and is given full force and effect.

It has been held with respect to other classes of municipal corporations that the invalidity of an ordinance must be raised at the first opportunity, Frank v. Wabash Railway Co., Mo., 295 S.W.2d 16 at page 21, and this is equally applicable to the ordinances of a special charter city. The allegation in defendants' answer that " * * the said described area is incorporated into the Town of Bridgeton and is not unincor-

porated land" is in effect a pleading that Ordinance No. 305 was invalid. Moreover, as soon as the issue was raised in evidence the transcript discloses that defendants' counsel made prompt objection upon the ground that Bridgeton was not authorized by the statutes or otherwise to pass Ordinance No. 305 and thus "disannex", so to speak, this disputed area. The defendants raised the point at their earliest opportunity.

■ Defendants' counsel attacks the validity of this ordinance and its admission into evidence on the grounds that the file in the proceeding in the circuit court between St. Ann and Bridgeton was introduced into evidence and fails to disclose that the consent decree provided for by the terms of Ordinance No. 305 was ever entered. The whole purpose and intent of this ordinance was to compromise litigation pending between the two municipalities by Bridgeton's withdrawal of any claim to any of the area St. Ann seeks to annex. The amendment in Ordinance No. 305 of the boundaries stated in the previous ordinances effectively did so. The fact that this compromise was not spread upon the records of that case in the circuit court could not affect the validity of the ordinance.

■ The attack upon the validity of this amending ordinance was also based on the contention that Bridgeton had no authority to pass such an ordinance. In this connection it should be pointed out that there is no contention in this case dealing with the unreasonableness of the ordinance nor the soundness of the trustees' exercise of discretion in enacting it. What is here presented is their legal power to enact such an ordinance. The general rule is that municipal corporations are creatures of the law and have no powers other than those expressly or impliedly granted to them by law. See Missouri Digest, Municipal Corporations, ☞57. The act of the legislature incorporating Bridgeton is found in Laws of Missouri, 1842–43, Twelfth Assembly, at page 380. The first section thereof provides, among other things, that Bridgeton " * * * may sue and be sued * * *." Certainly such a provision by necessary implication gave to Bridgeton, acting through its proper authorities, power to settle and compromise such litigation as it may bring or, as in this case, may be brought against it. Section 5 of that Act provides Bridgeton with the power to, among other things, " * * * pass all ordinances to carry into effect the objects of this act, and the powers herein granted, as the good of the inhabitants may require * * *." This is a clear recognition of the right of Bridgeton to pass such ordinances as its governing body in the exercise of its said discretion deems necessary to the proper and efficient function of the town. Moreover, § 9 of the Act provides that, "All ordinances passed by the board of trustees shall continue in force until altered or repealed * * *." This is another clear recognition of the right of the trustees to amend ordinances which they determine in the exercise of their sound discretion that the forces of time and circumstances require amending to conform with the city's best interests.

■■ We therefore hold that Bridgeton had authority to enact Ordinance No. 305, compromising and settling the dispute between that Town and St. Ann, and that this ordinance was in full force and effect although the consent decree provided for therein was not entered. It follows that since the evidence is undisputed that this ordinance removed any claim by Bridgeton to any portion of the area which St. Ann now seeks to annex, the proposed area is unincorporated land, the defendants' other contention that it is not such for the reason that it is incorporated in the County of St. Louis having been disposed of adversely to defendants by City of Olivette v. Graeler, Mo., supra. The City bore its burden of proof as to this requirement of § 71.015, supra.

The second requirement of § 71.015, supra, is "That such annexation is reasonable and necessary to the proper development of

said city * * *." One of the effects of the passage of § 71.015, supra, was to shift the burden of proof from the opponents of annexation to the city proposing it, City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546, at loc. cit. [1] on page 551, and concerning the burden of proof prior to the passage of this section. See Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236 at loc. cit. page 248. In the instant case the city has the burden to prove, as it was stated in City of Olivette v. Graeler, Mo., supra, at loc. cit. pages 836–837, of 338 S.W.2d:

> " * * * two separate but closely related concepts; that is, (a) that the annexation is reasonable, and (b) that the annexation is necessary to the proper development of the city. The plain language of the provision makes evident the legislative intent. To say that the annexation must be 'reasonable * * * to the proper development of said city' is confusing and tends to preclude a judicial inquiry into the reasonableness of the annexation from the standpoint of the area to be annexed. Both parties are entitled to the test of reasonableness. City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505, 516 [3, 4]. To hold otherwise might render the Act vulnerable to an attack as to its constitutionality. See 16A C.J.S. Constitutional Law § 604c, p. 726."

In City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, at loc. cit. [6, 7] at page 9, the court held that in annexation cases the requirement of necessity becomes a part of the reasonableness of the annexation even as it was before the passage of § 71.015, supra.

In the annexation cases which the appellate courts of this state have reviewed since the passage of the Sawyer Act, it has been repeatedly stated that the cases prior to the Act may furnish general guides as to the determination of the issues presented. For example, see City of Wood-son Terrace v. Herklotz, Mo.App., 349 S.W.2d 446 at loc. cit. [2, 3] page 448; City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, supra, at loc. cit. [13, 14] page 17. In the cases decided before the Act, a case of reasonableness was made, as it was stated by this court in Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236, supra, at loc. cit. page 249:

> " * * * where it appears that the land annexed is so situated as to be adaptable to urban purposes, and necessary or convenient to a reasonable exercise of the city government."

In City of St. Joseph v. Hankinson, Mo., supra, at loc. cit. [6, 7] page 8 of 312 S.W.2d, the court held that the legislature is presumed to have used the words in § 71.015, supra, in the light of the definition and construction of those words in the opinions of that court prior to the passage of the Act. The court further held at that same citation:

> " * * * it has been the universal rule that the court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of 'reasonableness' is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive. [Citing cases.] The function of our courts, historically, has been merely to determine, in the light of these principles, whether the exercise of the legislative powers has been arbitrary and clearly unreasonable. (See the cases just cited.) Only to this extent do our courts consider the reasonableness of an annexation."

There is therefore no difficulty as to the city's burden of proof as to the showing of reasonableness as far as the city is con-

cerned. It is the same as before the passage of § 71.015, supra. The burden is met when the city introduces proof that raised a fairly debatable question, City of St. Joseph v. Hankinson, Mo., supra. Accordingly, the trial court's finding that " * * * It has not been shown that the expansion is vitally necessary to the survival or well-being of the incorporated city * * *" is unwarranted and results from placing a burden of proof upon the city beyond that required by § 71.015, supra, as interpreted by the cases above cited. The evidence in this case certainly meets the requirement that the wisdom of the annexation from the city's standpoint is debatable, and accordingly we cannot hold the exercise of that legislative power by the city council to have been arbitrary or unreasonable.

▌ The city's burden is to also show that the annexation is reasonable as to the proposed area, City of Olivette v. Graeler, Mo., supra. It should be noted in this regard that no city council acting for the residents of this area has adopted any ordinance or otherwise spoken as to this annexation so that the judicial function is restricted to a determination of whether the exercise of power by that body was arbitrary and clearly unreasonable. But this does not mean that a different amount of proof should be required of the city as to showing the annexation reasonable to the proposed area. What the judicial inquiry is directed toward is one act of the city's council. It is true that the inquiry is two-pronged: that is, the one legislative act of the city's council is viewed in two aspects, reasonableness to the city, and reasonableness to the proposed area, but it is one legislative act. Thus it follows that the reasonableness of both aspects of the city council's act is subject to the same burden of proof. Accordingly, when the city's proof raises a fairly debatable issue as to the reasonableness of the annexation as viewed from the aspect of the proposed area, it has sustained that burden required

of it by the provisions of § 71.015, supra. See City of Lexington v. Shepard, Mo. App., 344 S.W.2d 308 [1]; City of Aurora v. Empire District Electric Company, Mo. App., 354 S.W.2d 45 [3]; City of Woodson Terrace v. Herklotz, supra. All of these cases were decided after the Graeler case.

Such an interpretation is consistent with the purpose and intent of the legislature in enacting § 71.015, supra, as that purpose and intent has been construed by the Supreme Court of this state. In City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, supra, at loc. cit. [8], page 9, the court held:

"[8] We construe § 71.015 as merely giving to the courts, in advance of a consummated annexation, the same judicial power and authority to test the reasonableness and necessity for an annexation which they have always exercised after its completion; that is to say, to decide whether the legislative declaration by the city is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of its legislative power. Considered in this light, the change is procedural, and the legislature has not delegated to the courts the power to determine reasonableness or necessity in the first instance, as would a legislative body. We believe that our construction fairly reflects the intent of the legislature. Such a construction is certainly more reasonable than any other when we recall that the general annexation statutes, giving broad original discretionary powers to cities generally, are unrepealed. In our present view the old and new statutes are in harmony. * * *"

The opinion in the St. Joseph case was reaffirmed in the City of Olivette case. This is the ruling on the point in City of Olivette v. Graeler, Mo., supra, at loc. cit. [18, 19]

page 837 of 338 S.W.2d where the court held:

"* * * The issues of reasonableness and necessity as well as the other fact questions in a Sawyer Act case should be determined in the same manner that such issues are decided in other actions. *The courts perform a similar function in reviewing orders of the Public Service Commission which is essentially an agency of the legislature exercising law-making powers.* (Citing cases.)" (Emphasis supplied.)

The scope of judicial inquiry in reviewing orders of the Public Service Commission is well recognized as limited to a determination of whether or not the decision of the Commission was reasonable and lawful (see Missouri Digest, Public Service Commission, ⊶32). In this regard, the transcript discloses ample evidence pro and con upon this issue that would cause reasonable minds to differ as to the conclusion to be reached, and therefore either way the city council decided would not be unreasonable, City of Woodson Terrace v. Herklotz, Mo. App., 349 S.W.2d 446 at loc. cit. [2, 3] page 448, and cases there cited.

In the opinion in City of Olivette v. Graeler, Mo., supra, at [20], page 837 of 338 S.W.2d, it was said that the aids and guides developed by the cases occurring prior to the effective date of § 71.015, supra, are still helpful in arriving at a decision on the ultimate fact questions, "* * * Nevertheless new laws and modern economic and social trends must be taken into consideration and each case must depend on its individual facts and circumstances." This was followed by a discussion of the growth of St. Louis County and the large number of incorporated cities existing within that county and competing for the relatively small unincorporated area that is still available and suitable for annexation. Then at page 838 of the opinion the court, in its discussion of these matters, stated that "It would seem to be in order for the court to consider what the 'proper development' of a city is in these circumstances *as an element of the issues of necessity and reasonableness.*" (Emphasis supplied.) Later in that same opinion at [21], page 838, the following appears:

"The legislative trend has been to vest counties with greater authority to perform services of a local or municipal nature. This permissive legislation and the extent to which it is used must be taken into consideration in determining whether the annexation is authorized. *The interest of the county as a community must be weighed against the claims of the city because the county's municipal powers are also provided by law and are a part of the public policy of the state.* Attention should be given to the needs of the area for municipal services, whether they are adequately cared for and whether they should be supplanted by those of the city." (Emphasis supplied.)

The trial court stated in its memorandum opinion that it had withheld its judgment in this case until the opinion in the Olivette case had come down, but there is no holding or finding by the trial court relating to this issue. The trial court's findings and conclusions of law were made only with respect to the relative benefits or detriments to the city and to the residents of the proposed area.

It is true that the city in the instant case did not specifically allege that the interest of the county as a community when weighed against the claims of the city authorizes or compels approval of this annexation. Such an allegation in the petition is not necessary, in view of the earlier statements that this matter is an element of the issues of necessity and reasonableness. It would be encompassed within the allegations of the petition as to those issues, City of Olivette v. Graeler, Mo., supra.

When the statement in the Olivette opinion as set out above, to which we have supplied emphasis, is considered in context with the whole opinion, as it must be, and especially when that sentence is read with those that immediately precede and follow it in the excerpt from the opinion quoted above, we think it clear that what was referred to was the interest of the county as a community with respect to the furnishing of municipal services to the proposed area and the comparison of those services with those which the city could offer the proposed area, should annexation be accomplished. As has been held earlier herein, this issue was in the case, was developed, and was available for any further development the parties desired.

We therefore hold that the city bore its burden of proof as to the second requirement of § 71.015, supra, as that requirement has been interpreted by the Supreme Court of this state, City of Olivette v. Graeler, Mo., supra.

The third requirement of § 71.015, supra, was pleaded in Paragraph 6 of the city's petition. The motion to dismiss made by the defendants at the close of all the evidence gave as one of the reasons therefor that the city had " * * * failed to carry the burden of proof of the ability of the city to furnish services." This transcript is unusual in that the interrogatories and answers to the interrogatories were made a part of the transcript although they were never introduced into evidence. They were filed in the trial court, and since they are a part of the transcript which has been signed by both counsel, they are before us for our consideration. Interrogatory No. 61 was, "What municipal services is plaintiff able to furnish 'to all parts of said unincorporated area' as alleged in Paragraph 6 of the petition herein?" For answer to that interrogatory it was stated that the city will furnish all municipal services to the area which are now being given to the present residents of the City of St. Ann, including police protection, street maintenance, use of city parks, the summer playground program, street lights, garbage and refuse collection. It was further stated in that answer that the present services of the city would be "enlarged" to take care of the proposed area. The city also alleged in paragraph 6 of its petition that it would, within a reasonable time after annexation, extend additional services to the proposed area, and Interrogatory No. 62 asked what additional services the city expected to be able to extend. The answer dealt with the study the city was making at the present time for the building of an outdoor swimming pool, and its consideration of the building of a community center to provide " * * * quarters for a year round supervised program for the children and teenagers of the City * * *." Interrogatory No. 63 asked, "How long is the reasonable time referred to in Paragraph 6 of the Amended Petition herein?" The answer was placed on the basis of the city's performance in extending its municipal services to the area covered by the previous annexation. This annexation was effective on April 1, 1958, and the garbage and rubbish collection service of the city was extended to the newly annexed area on May 1 of that year. It was further stated that within five months the area then annexed had been furnished with street lights and that police services in the newly annexed area went into effect the day after the annexation became effective. However, we are not confined to the interrogatories for proof on this matter. The city, by Ordinance No. 246, unequivocally declared that it is willing, able and ready to furnish its normal municipal services to the proposed area within a reasonable time. This court held such a declaration to be important in the determination of proof of the city's ability in City of St. Ann v. Buschard, supra, (299 S.W.2d 546) at loc. cit. [5–6], page 553.

There is another reason why there was no evidence given by any witness upon this question similar to that given by the fire chief and police chief and other city officials in City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505 at loc. cit. [4] page 510, and [12, 13] p. 518. It is to be remembered that

fire protection and water and electrical services are not given by the city in the instant case to its residents, and of course therefore the city could not offer testimony as to the plans for extension of those services to the proposed area. In this connection, we think the motion to dismiss made by counsel for the defendants at the close of all the evidence, giving as one of the bases therefor that the city " * * * failed to carry the burden of proof of the ability of the city to furnish services" is illustrative of a misconception of the requirement of the statute which permeated the entire theory of the defendants upon this particular point. The statute does not contain any requirement that the city is to furnish normal municipal services. As we said in the City of St. Ann v. Buschard, supra, at loc. cit. [4], p. 552 of 299 S.W.2d, all the city is required to do is to prove its ability " * * to furnish normal municipal services *of said city * * *.*" (Emphasis supplied.) This is the very language of § 71.015, supra, and we cannot judicially enlarge upon such a clear expression of the legislative intent so as to require the city to plead and prove its ability to furnish normal municipal services. The wisdom of the legislature in adding the words, "of said city" is obvious, for without them the courts would be enmeshed in determining what municipal services were normal for that particular city.

There was no evidence to support the trial court's conclusion that there " * * * is the inference that the expansion of facilities by the city may require outlays that would minimize its present financial position." The only evidence is that the city had a large tax base, was in excellent financial condition, had at that time and previously a substantial surplus, and had accepted the financial burdens of a previous annexation without difficulty.

■ Considering the soundness of the city's financial condition and the inference that the surplus is available to pay for the extension of these services, the evidence of

the city's past action, the answers contained in the interrogatories, and the declaration of policy contained in the ordinance, we hold the city bore its burden of proof as to its ability to furnish the normal municipal services of said city to the proposed area within a reasonable time after the annexation is to become effective.

Also in consideration of the third requirement set forth by § 71.015, supra, it is to be noted that this is to be a class action under the provisions of § 507.070, supra. The transcript discloses the energetic and able manner in which the defendants' counsel presented his contention that this petition did not properly plead a class action under the provisions of the statute above referred to, nor was there proof of the requirements necessary to maintain such an action. At the opening of the trial before any testimony was heard, counsel for defendant objected to introduction of any proof upon the specific ground that the petition " * * * does not contain those allegations which by statute and Supreme Court Rule are necessary for the maintenance of a class action." Again at the close of all the evidence, counsel renewed his objection.

■ That portion of § 507.070, supra, with which we are here concerned is found in Paragraph 1 thereof as follows: "If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, one or more, as will fairly insure adequate representation of all may, on behalf of all, sue or be sued, * * *." See also Civil Rule 52.09(a) V.A. M.R.

The allegations of the city's petition were,

"That the defendants are inhabitants of the hereinafter described unincorporated area in St. Louis County, Missouri, adjacent to the aforesaid City, residing in various portions of said area, and are fairly representative of the class consisting of the inhabitants of this area."

So far as the proof of these allegations is concerned, that burden was clearly borne by the city. The testimony was that 28 names were obtained from the Board of Election Commissioners of St. Louis County by giving the Board a list of the streets in the proposed area and requesting the Board to give the city the name of one registered voter on each of the streets. In addition, the testimony was that the defendant Buschard was chosen because he had been active in attempting to defeat the earlier annexation proceeding and was a well-known community leader in the proposed area. The defendants' attack upon this proof at the trial was that there was failure to show how many of the defendants were still residents of the area at the date of trial, or whether they were homeowners, or other facts about them. A ruling upon that point is unnecessary in this case because it is obvious that nine defendants, at least, remained residents, because they hired counsel and contested the matter. There was also evidence that a tenth defendant filed an answer. In the first City of St. Ann case (229 S.W.2d 546) at loc. cit [10] p. 554, this court held the naming of one defendant, Buschard, also named as a defendant in this case, was compliance with the requirements of the statute and rules. It should also be pointed out that this court has recently considered the matter of compliance with requirements of the statute and rules in Sheets v. Thomann, Mo.App., 336 S.W.2d 701, and when the proof in this case is considered in the light of our holding therein as to the requirements contained in the words "fairly chosen" and "adequately" represent the class, it is obvious that the statute and rule were complied with. Moreover, the determination of what number is required to insure adequate representation rests ultimately in the sound discretion of the trial court, City of St. Ann v. Buschard, supra, at loc. cit. [7–9] 299 S.W.2d pp. 553–554. In the instant case the trial court found "that the defendants named and served in this action were adequately and fairly chosen and are representative of the class * * *." In view of their number, their residence in the proposed area at the time of service, the previous connection of the defendant Buschard with those opposing annexations to the city, and the vigorous and ultimately successful efforts in the trial court of their counsel, we do not find the trial court's discretion to have been abused by its findings in this regard, and we also so find the defendants to be such and selected in a manner that complies with the statute and rule.

It follows from what has been held herein that the city met its burden of proof as to all three requirements of § 71.015, supra, and that the judgment of the trial court undoubtedly resulted from the failure of the trial court to limit its inquiry concerning the requirement of that section of our statutes concerning the reasonableness of the city council's action as viewed from the two aspects of the city and the proposed area to a determination of whether the evidence on such issue raises a fairly debatable question. If the evidence meets that test, then judicial inquiry can go no further. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4, supra; City of Olivette v. Graeler, Mo., 338 S.W.2d 827, supra; City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505, supra; City of Woodson Terrace v. Herklotz, Mo. App., 349 S.W.2d 446, supra. In this case, the evidence clearly meets the test.

Accordingly, the judgment should be reversed and the cause remanded to the trial court with directions to enter its judgment for the city. The defendants' motion to strike plaintiff's brief and dismiss appeal, and motion to strike parts of plaintiff's brief, are overruled.

The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The defendants' motion to strike plaintiff's brief and dismiss appeal, and motion to strike parts of plaintiff's brief, are overruled. The judgment is reversed and the cause remand-

ed to the trial court with directions to enter its judgment for the City of St. Ann.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.