**CITY OF ODESSA, Missouri, a municipal corporation, Plaintiff-Respondent,**

v.

**Gene CARROLL et al., Defendants,**

**Action Products, Inc., et al., Intervening Defendants, Appellants.**

**No. KCD 26564.**

Missouri Court of Appeals, Kansas City District.

Aug. 5, 1974.

Reed O. Gentry, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for defendants-appellants.

N. R. Bradley, Lexington, for plaintiff-respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiff City of Odessa brought suit for declaratory judgment in four counts under § 71.015 RSMo 1969, V.A.M. S., for judicial determination that the pro-

posed annexations of four areas, each authorized by separate ordinance, were reasonable and necessary to the proper development of the city, and for judicial approval to hold an election for the annexation of those areas. The trial court heard evidence and entered judgment for plaintiff on each count. Residents and property owners in the area described in Count III of the petition were granted the right to intervene as defendants, and they now appeal from the judgment for plaintiff city entered on Count III.

The judgments of the trial court that the proposed annexations of the areas described in Counts I, II and IV of the petition were reasonable and necessary have become final adjudications and cannot be affected by our determination on this appeal of the validity—or lack of it—of the proposed annexation under Count III authorized by a separate ordinance City of Cameron v. Stafford, 466 S.W.2d 115, 119 [1] (Mo.App.1971).

Odessa is a city of the fourth class within Lafayette County on Interstate 70 some 36 miles east of Kansas City. The present limits encompass 1,406 acres and should the electorate approve annexation of the areas described in Counts I, II and IV [found by the court to have been reasonable and necessary to the development of the city] another 692 acres will have been added to the municipal girth. The area in dispute on this appeal comprises yet another 697 acres.

The evidence for the plaintiff city showed an increase in population from 1,881 in 1940 to 2,839 in 1970 and, on the basis of the growth of the last decade, an increase of an additional 1600 inhabitants was projected by the year 1990. A city planner and consultant, Ralph Ochsner, testified for plaintiff on the basis of a twenty year planning period. His study included a land-use survey of the city, a street and building and condition inventory, analysis of the utility systems, and other such features. To accommodate the

projected increase in population and to protect the orderly development of Odessa as a neighborhood unit, he recommended that a girdle of land around the city, one-half mile to a mile in depth, be annexed. The witness could not say how much acreage the city then comprised or the area then available in Odessa for residential use. He conceded as a reasonable estimate, however, that about 600 acres [or more than one-third of the total municipal land area] were vacant and available for such use. He deemed it a normal condition that undeveloped land should appear in older areas, of a city, but a condition which discourages new residential construction. The witness acknowledged that, based upon the recommended density of ten persons to the acre for future population growth [a density which has characterized past single-family development in the city], the 600 residential acres would accommodate 6,000 people. If, on the other hand, 125 acres of multi-family housing were constructed as recommended by the witness, at the normal density of 26 persons to the acre, 3,250 people could be accommodated with more than 400 acres still available for single-family use. In none of the four areas proposed for annexation has residential spillover taken place. In fact, in all, only about 20 people are resident in those areas. Nor is there any shortage of space for central business purposes. Except for one welding shop, not a single industrial plant has come to Odessa since the completion of Interstate 70 in 1964, and the interchange at the highway is such that unless remedied, will continue to deter the growth of the city.

The witness expressed judgment that the city would provide adequate municipal services to the areas proposed for annexation. The existing major streets in Odessa, however, are inadequate as a transportation sysem and in the quality of construction, with a very high percentage of the streets in need of repair. Another witness for the city, the recent mayor, acknowledged that the revenues available for

the maintenance of the streets were woefully inadequate, and but for the gift of $15,000 by the Bank of Odessa, the condition of disrepair would be even more pronounced.

The city operates a water plant from reservoirs which recently expanded will supply a population of 12,000, owns an electric system, a septic plant for the disposal of sewage, is served by a natural gas franchise, operates a police department consisting of a marshal, four policemen and two cars, and has the services of an efficient volunteer fire department of sixteen members and access to two trucks. The areas proposed for annexation will have the benefit of such services in some measure.

The area sought for annexation under Count III [the only proposal in dispute on this appeal] receives electrical power from an expanded municipal grid system. City water is furnished through a 12 inch line extended from the city limits to the area by Action Products at a cost to the company of $30,000. In the event of annexation, water would not be available for subscription as a matter of right, but at the determination of the administration nor, in the event of annexation, does the city have either funds or plans to extend water distribution lines. The area is under the police protection of the Sheriff of Lafayette County and under the fire protection of the rural fire district area. Annexation would result in no additional services other than to make sewers available and to provide for planning and zoning. The amenity of a sewer, however, would be open to those residents who paid for the cost of connection. At the present time only about 460 acres of the area in dispute under Count III is served by a sewer line and treatment facility. The total facility was designed for a capacity of 1,100 people, so that the number of those presently served [a fact not known to the witness, a surveyor-engineer] necessarily limits and determines remaining capacity. Collecting mains would be required to transmit sewage to the line, but the city would not be obligated for such installation from general revenues from industrial development. Streets would be installed at the expense of residents and the city would thereafter determine whether to maintain them, depending upon municipal capacity to fund the cost.

The former mayor testified also that within the last few years there has been an influx of people into Odessa. Most of them, 500 to 800 persons, have been accommodated within the nine or ten mobile home courts in the city, and only 60 or 70 of them in single family housing. During that time, also, several new shops have been established in the city; a farm supply store, grocery, a gift and floral shop, liquor store and two mobile home sales outlets. Efforts to attract new industry to Odessa, however, have met with no success.

The fiscal condition of the city is reflected by an assessed valuation of $3,709,530, a bonded indebtedness on various utility sinking funds and general obligation bonds outstanding on the water system, and total funds on hand in all accounts as of December 31, 1971 of $233,365.38. The electorate has recently defeated two separate sales tax proposals, and the municipal streets still suffer from lack of adequate funds.

The area sought for annexation under Count III lies due west of the present city limits and is bound on the north by Interstate 70. It is given over largely to agriculture. Along an extension of the city's Main Street and close to its western limits, however, a number of industries flourish within the area sought for annexation. Action Products Company has manufactured housewares from that location for the last 16 years and employs 120 persons. This plant rests on a 30 acre tract. Mr. Bellington, president of the company, and his wife occupy a home on 28 acres of land which adjoins the plant. It was he who contracted for a water line to be installed

at company expense from inside the city limits to the plant. The company has also paid the cost of a hard-surface roadway from the plant to Interstate 70 and also maintains the road which runs to the limits of Odessa. [As far as we are able to determine the Bellingtons are the only residents in the 697 acres sought for annexation under Count III.] Action Products purchases electrical power from Odessa, natural gas from the Gas Service Company, and disposes of sewage by means of three septic tanks and two lateral fields located on the company property. The Bellingtons use a separate lateral field on the home property. A sprinkler system serves the plant through the water supply of the 12 inch line installed by the company. To the west of Action Products is the Reich Mushroom plant which was established a year and a half before and which employs about thirty people. To the north of the Action Products plant is an undeveloped ten acre tract held for industrial development. The north of that tract is located the Scott Cook Farm Equipment and Supply Company. To the east of Action Products is located a building belonging to the Mowett Company [not further identified]. We have noted that this area is served by the Sheriff of Lafayette County and has the services of a volunteer rural fire department.

The evidence of defendants-intervenors did not vary significantly from that of the plaintiff city but served, interstitially, to furnish data otherwise lacking. Thus, a registered surveyor determined that of the total area of the city zoned for single-family residence, 380 acres remained vacant, that 125 acres remained for multi-family residences; that 65 of the 80 acres zoned for industrial use were still available as well as 37 acres of the 50 acres zoned for commercial use. There was also expert evidence that, both in the greater Kansas City area and on the national scene, the trend favors multi-family units over single-family dwellings. There was other evidence, corroborative of that given by the city, that no new industry has been attracted to the community, that the maintenance of streets in the city remains inadequate, that such maintenance was possible in 1970 because of the gift from the Bank of Odessa, and that virtually all recent residential development has been trailer courts and mobile homes.

Annexation is a legislative function. A city is authorized by the Sawyer Act [§ 71.015, RSMo 1969, V.A.M.S.] to proceed to the annexation of an unincorporated area of land by a petition showing that the proposed extension of municipal boundary (1) is reasonable and necessary to the proper development of the city and, (2) the city is able to furnish normal municipal services to the area annexed within a reasonable time. The scope of judicial review in such matters is to determine whether the reasonableness of the legislative action is fairly debatable; if so, it is conclusive on the courts. City of St. Joseph v. Hankinson, 312 S.W.2d 4, 8 [6, 7] (Mo.1958). The Act places the procedural burden of proof of the statutory elements upon the city which seeks to annex. City of Olivette v. Graeler, 338 S.W.2d 827, 833 [2, 3] (Mo.1960). The proof of reasonableness required by the statute, however, is not made out by a showing of the city's necessity alone, since the area to be annexed is also entitled to the test of reasonableness. City of St. Ann v. Buschard, 356 S.W.2d 567, 575 [7, 8] (Mo.App.1962). The comparative benefits and detriments to both the city and the area proposed for annexation, therefore, are considerations in any judicial determination of the reasonableness of the annexation. City of Salisbury v. Nagel, 420 S.W.2d 37, 44 [13, 14] (Mo.App.1967).

The evidence is not fairly debatable: the city has failed to prove either the necessity of the annexation for itself or its reasonableness to the area proposed for inclusion. The premise for annexation offered by the city—that a burgeoning population and the extension of city services to

the contiguous industrial area have created an urgent need for city planning and zoning to ensure orderly development—is not justified. The assumption that the area described in Count III is necessary to accommodate the population growth of the city is visionary. The only valid and predictable estimate for future population growth was given by Ochsner, the city planner, who testified for the city. He projected an additional 1,600 residents by year 1990, or a total population of about 5,000. On that assumption, even on the basis of a density use of 10 persons per acre [which has characterized the past development of Odessa], the existing residential acreage within the city would be more than ample to accommodate such growth. When we consider that the accelerated influx of population with the past two years of annexation has been predominantly to high density mobile home residency, there is even less necessity to seek outlet beyond the city boundary. In so concluding, we recognize that a city is not foreclosed from annexation simply because unexploited areas remain within its present boundaries or because its citizens do not choose to build within certain of its areas. City of Ash Grove v. Davis, 418 S.W.2d 194, 205 [11, 12] (Mo.App.1967). There is no evidence here, however, that 500 acres and more within Odessa remain undeveloped for residential use because its citizens prefer to live in the area proposed for annexation, but because Odessa has sufficient area for its present needs and for the demands of the foreseeable future. There has been no spillover of population from the city into the area proposed for annexation, nor even demand for that land for residential development as homesites or trailer-courts. See, City of Houston v. Duff, 338 S.W.2d 373, 378 (Mo.App.1960); City of Cameron v. Stafford, supra, l.c. 121 of 466 S.W.2d. In fact, only Mr. and Mrs. Bellington are shown by the record to reside in the tract sought for annexation. The recent influx of population into Odessa has settled, predominantly, in the mobile home courts with which Odessa is so well endowed. This use, distinctively high density in character, has not affected the greater portion of land zoned by the city for residential purposes, which remains vacant.

■ The business expansion of a city is an important factor in determining the necessity, and ultimate reasonableness, of annexation. City of Rock Port v. Atchison County Co-op. Ass'n., 432 S.W.2d 317, 325 [1, 2] (Mo.1968). The evidence of necessity on this element of proof is even less convincing. It was not disputed that no new industry has come to the city within recent years, that none has responded to the blandishments of city puffers, and that the present condition of the interchange at Interstate 70, unless remedied, will continue to inhibit such growth. It was also the evidence that the Missouri Highway Department had adopted a five-year program which did not include the installation of an improved interchange, and that no funds will be available for such a project for at least that period of time. There was evidence of industrial development *outside* the city—the establishment within the past two years of the Reich Mushroom plant in the area proposed for annexation. In assessing the need for annexation, the expansion and rate of growth of a city during the immediate past is a criterion by which to judge the future; the hope for the future must bear some reasonable relationship to the actuality of the past. Faris v. City of Caruthersville, 301 S.W.2d 63, 69 [9–12] (Mo.App.1957). On this criterion, the need for annexation for residential or industrial municipal use of an area predominantly agricultural is not demonstrable but only hypothetical.

■ It appears to be the argument of the city that annexation is justified because the area already benefits from municipal services and therefore is convenient to the exercise of city government. The test, however, is not only convenience to the city but also fairness to the residents of the area proposed for annexation. City

of Olivette v. Graeler, supra, l.c. 836 of 338 S.W.2d. The extent of city services to that area is electrical power and water. The supply of water was made possible by the installation of a 12 inch line by Action Products at a cost of $30,000. From what we make of the record, the residents of the area [all industrial except for the Bellingtons] dispose of their waste by facilities privately installed. The presence of a municipal sewer line within the area is adventitious; it does not serve any residents of this agricultural tract, because there are none, but traverses the area as a convenient means to the lagoon which serves the City of Odessa. The small industrial area within this tract contiguous to the city, we have shown, has provided adequately for the disposal of its waste; and neither needs nor benefits from municipal disposal. Nor is there any showing that the development [the cluster of industries and the Bellington residence] contiguous to Odessa poses such a threat to the health, welfare or safety of the city as to invite municipal control. See, City of Tracy v. McCrea, 374 S.W.2d 553, 555–556 [2] (Mo.App. 1963). The office of the Sheriff and the rural fire department have efficiently protected that area. In sum, it is evident that the area is not in need of additional city services and, while annexation would yield a boon to Odessa in taxes, no compensating benefit appears for the residents annexed. See, City of St. Peters v. Kuester, 402 S.W.2d 70, 75 [6] (Mo.App.1966).

The ultimate urgency which the city finds for annexation is that the area have the benefit of city zoning and planning to prevent random development. We have determined, however, that the area can by no means be considered a de facto extension of the municipality, and that it is an unreasonable expectation that this predominantly agricultural tract will foreseeably be put to the city's residential or industrial uses. However desirable may be the objective of an orderly development of land contiguous to a municipal boundary, that consideration alone does not justify annexation. City of Butler v. Bock et al., 492 S.W.2d 160, 163 (Mo.App.1973).

Plaintiff city has failed to show that the proposed annexation was reasonable or necessary. Failure of proof of this first statutory requirement renders the annexation per se unreasonable and we need not determine the ability of the city to furnish its normal municipal services to the area within a reasonable time. City of Bourbon v. Miller, 420 S.W.2d 296, 303 [10] (Mo. banc 1967).

The judgment of the trial court on Count III of the petition is reversed.

All concur.