CITY OF JEFFERSON,
Plantiff-Respondent,

v.

Mary J. SMITH et al.,
Defendants-Appellants.

No. KCD 28090.

Missouri Court of Appeals,
Kansas City District.

Nov. 1, 1976.

---

548

Carson, Monaco, Coil & Riley, Michael P. Riley, Jefferson City, for defendants-appellants.

Graham & Graham, Thomas D. Graham, Christopher Graham and James P. Dalton, City Atty., Jefferson City, for plaintiff-respondent.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

SHANGLER, Judge.

This appeal is from a declaratory judgment that the resolution adopted by the

respondent City of Jefferson for the annexation of an unincorporated tract within the county was authorized under The Sawyers Act [§ 71.015, RSMo 1969]. The appellants are residents of the area subject to annexation.

The requirements for annexation under the Act are that a city which has resolved to extend its limits to include an unincorporated area of land must prove a declaratory judgment on a petition which pleads: (1) the area to be annexed; (2) that the annexation is reasonable and necessary to the proper development of the city; and (3) the ability of the city to furnish its municipal services to the unincorporated area within a reasonable time. The declaratory judgment was supported by findings of fact and conclusions of law on these statutory elements. The appellants contend the judgment was erroneous because of the failure of the court to find that the annexation was reasonable to them as well as to the city, and for other failures of proof.

The plaintiff city is of the third class located in Cole and Callaway Counties. It is shown to have a population of 34,530 and contains 12,999 acres within its present municipal boundaries. The annexation proposes to add 1332 acres to the western limits of the city and includes a corridor which tends to make the southwestern boundary more regular. At the time the annexation resolution was adopted, some seven hundred people lived in the area, including the occupants of one hundred and fifty apartments [the bulk of them on the Knipp tract in the southern part of the area for annexation], fifty-five single family homes in the northwest and west of the area, and thirty-three mobile homes in the southwest corridor. A cluster of commercial and office buildings are concentrated along North Ten Mile Drive in the northwest corner of the area. The annexation area stands astride of U. S. Highway 50 which bisects the area and intersects with North Ten Mile Drive near the Jefferson City Country Club. The club and a cemetery form the westernmost boundaries of the annexation. A large tract just north of the highway has been acquired by the General Growth Corporation for the development of an enclosed mall and other consumer amenities.

The city presently furnishes only limited services to the proposed adjunct of land. The mobile park corridor already receives municipal sewer service, and a trunk line is in place for use in the commercial hub on North Ten Mile Drive and will become operative by the installation of pumps promptly upon annexation. The rest of the area disposes of waste by lagoons and septic tanks. A county volunteer force fights fires, streets are maintained by the county and county police protect the area against crime. The land use is random and without regulation of zoning or building codes. The result has been a marked increase of traffic hazards along the North Ten Mile Drive commercial area.

The respondent City of Jefferson is shown to be solvent and otherwise fiscally responsible. It is fully endowed with the capacity for every service a modern city has to offer and is able to extend them to the area which it seeks to include. Annexation would open the area to city fire and police protection, sewer disposal service, traffic control, street cleaning, zoning regulation and all the other amenities now furnished the city populace, including a varied park and recreation service.

The burden rests on the municipality to prove the three statutory elements established by § 71.015 for valid annexation of an unincorporated area. Annexation is a legislative function and the scope of judicial review in such matters is to determine whether the reasonableness of the municipal legislation is fairly debatable; if so, it is conclusive on the courts. *Bourbon v. Miller,* 420 S.W.2d 296, 300[1–4] (Mo.banc 1967); *City of Odessa v. Carroll,* 512 S.W.2d 862, 866[1, 2] (Mo.App.1974). In this determination, both the city and the residents of the proposed area are entitled to the benefit of the test of reasonableness. *City of St. Ann v. Buschard,* 356 S.W.2d 567, 575[7, 8] (Mo. App.1962).

The declaratory judgment of the circuit court sustained the annexation on specific

findings that the statutory elements of proof had been met, among them, that the annexation was reasonable and necessary to the proper development of the city. The appellant contends that this conclusion truncates another essential finding—that the annexation is reasonable to the unincorporated area also—and thus does not validly declare an annexation under the statute.

■ In this regard, the provision of statute is only that the "annexation [be] reasonable and necessary to the proper development of the city". The statute in terms requires no more. The case law, however, has developed aids to reach the ultimate issues intended by that section. Thus, this component of the statute is said to embody two closely related concepts and must be read discontinuously: first, "that the annexation is reasonable" and second, "that the annexation is necessary to the proper development of the city." *City of Olivette v. Graeler,* 338 S.W.2d 827, 837[15, 16] (Mo. 1967); *City of Houston v. Duff,* 338 S.W.2d 373, 381[6] (Mo.App.1960). This discloses the intention that the test of reasonableness must be met as to both the city and the proposed area. It is evident, therefore, that a judgment which declares annexation reasonable and necessary to the proper development of a city implies the included finding that the test of reasonableness was met as to both parties.

The proper inquiry is whether the evidence supports these ultimate requirements of the statute, as found by the court, and it is to this question of sufficiency that we deem appellants direct their contentions.

As the initial evidence of the unreasonableness of the municipal annexation, appellants contend that the only benefits the city will provide, which are not already enjoyed by the unincorporated area, will be sewer disposal service at an estimated cost to each resident of $1000 in taxes and curbs which will cost $500. This, they conclude, is an unreasonable basis for annexation. This contention, however, is tendentious and misleading. The evidence established that annexation would bring many benefits to them in addition to sewer service: traffic

control, fire protection calculated to reduce their insurance rates, more intense police protection, zoning among other things. The appellants gave no evidence, so the inferences from the testimony of municipal witnesses went unchallenged. Gene Knipp, owner and developer of a large tract in the area, as well as a resident, stressed the importance of sewer installations to the growth of his housing development there. Joe De Long, a leader in the local chamber of commerce, explained how insufficient services had retarded commercial growth in the area, and that he had never been able to locate a business outside the police and fire protection zone of Jefferson City. Annexation and extension of city services, he concluded, would facilitate growth. A representative of the Insurance Services Office testified that city fire protection in the proposed area would improve such service and lower insurance rates. The benefits of such fire protection were confirmed by Corliss Jones, former president of the Jefferson City Country Club. The benefits of annexation, as told by Mr. Jones, would derive also from the city zoning and planning controls which would relieve the threat of incompatible business development near the country club.

■ The courts have articulated many tests to determine the reasonableness of an annexation, but not all of them need be met to justify a particular event. *City of St. Joseph v. Hankinson,* 312 S.W.2d 4 (Mo. 1958). An inclusive standard for annexation is given in *City of Cape Girardeau v. Armstrong,* 417 S.W.2d 661 (Mo.App.1967), l.c. 676:

> A case of reasonableness is made where it appears that the land annexed is so situated as to be adaptable to urban purposes and necessary or convenient to a reasonable exercise of the city government.

■ The contentions appellants make here that certain evidentiary components of reasonableness were not met, or that others shown were palpably for the benefit of the city alone, must be weighed against that paradigm. Our review under Rule 73.01 in such cases, however, no longer allows de

novo assessment of the evidence [compare *City of Houston v. Duff, supra,* l.c. 375], but binds us to sustain the judgment of the trial court unless it lack substantial evidentiary support. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976).

Accordingly, we shall assess these numerous contentions in composite for the ultimate determination of whether the test of reasonableness has been met.

■ The appellants argue next that there was a failure of proof that the proposed annexation was necessary to the growth of the city, that to the contrary, the evidence showed substantial undeveloped acreage within the municipal boundary. This argument supposes that 8000 unused acres remain to the city and is misleading. It was the testimony of the Director of Public Works that 3606 city acres were vacant, and of these, about 1650 acres were in larger tracts. In order to justify annexation, the city must show a need for residential, industrial and commercial sites within the proposed area and inability to meet this need without expansion. *City of Mexico v. Salmons,* 514 S.W.2d 102, 104 (Mo.App. 1974). Commercial and industrial expansion of a city are important factors in the determination of reasonableness and necessity of an annexation. *City of Rock Port v. Atchison County Coop. Ass'n,* 432 S.W.2d 317, 325 (Mo.1968).

The evidence was clear that the need for areas suitable for commercial development was one of the most cogent reasons for the annexation. Although some tracts for such purposes were available within the city, there was a shortage of large areas of undeveloped land suitable for commercial development within the city. One such large enterprise was under way within the city—a Housing Authority Corps of Engineers joint undertaking—but space for that project was obtained through the removal of homes and businesses already standing. Real estate developer Knipp testified that the rugged profile of much of the city land—such as the tract he owned—prevented him from building his apartment complex within the city, so that he was com-

pelled to locate his apartment complex as well as his business in the outlying area proposed for annexation. There was comparable evidence from witnesses De Long, Scott Cantine [who developed the municipal comprehensive plan] and others.

■ On the other hand, the record is replete with evidence of the suitability of the proposed area for commercial use and the municipal need of it. The General Growth Corporation purchased a large tract in the area for the development of a large shopping center. Several other businesses have already located there. The number of building permits issued within the city for commercial purposes indicates a constant commercial growth. The market survey which prompted General Growth Corporation to locate in the proposed area indicated a genuine need for commercial expansion within that trade area. This evidence supports the need for city extension to the land in question for that purpose.

■ The need for that area for the residential expansion of the city is not as abundantly proved, but nevertheless fairly debatable. There remain numerous plots of land within the city available for residential development, but that condition does not preclude reasonableness of annexation. *City of Ash Grove v. Davis,* 418 S.W.2d 194, 205[12] (Mo.App.1967). The significant evidence on this issue was the spill over of the municipal population into the proposed area, about 700 persons who lived there and were employed within the city. These circumstances confirm the adaptability of this area to city uses and the presence of a community of interest between them. *City of St. Joseph v. Hankinson, supra,* l.c. 18.

The appellants argue further: that to annex merely to impose zoning or orderly development is not a valid purpose. The cases cited on this point—*City of Butler v. Bock,* 492 S.W.2d 160 (Mo.App.1973) and *City of Odessa v. Carroll,* 512 S.W.2d 862 (Mo.App.1974)—do not bear on this discussion because here neither considerations stand alone to justify annexation. The need for additional commercial and residential sites for municipal expansion has al-

ready been shown. The migration of city population into the proposed area accompanied by a commercial development calculated to attract city custom establishes a community of interest and justifies concern by the municipality that the development at its threshold will be orderly. The regulation of such growth by zoning, in these circumstances, would be of mutual benefit.

■ The next contention is that the municipal history of frequent annexations renders the present legislative action unreasonable. The courts have commented that "[a]nnexation should be infrequent and the city should be permitted to make reasonable provision for the foreseeable future." *Rock Port v. Atchison County Coop. Ass'n*, 432 S.W.2d 317, 325[2] (Mo.1968). This declaration is designed to encourage good planning and does not lay down a quantitative measure of reasonableness. Each case of annexation presents it own features for consideration and must be determined on the facts presented. *City of St. Joseph v. Hankinson, supra*, l.c. 17[13, 14].

The final point made on the reasonableness and necessity requirement for annexation is that the inclusion of Jefferson City Country Club and the cemetery in the proposed expansion utterly fails to meet this statutory test and thus the entire annexation fails. The cases cited are *City of Rock Port v. Atchison County Coop. Ass'n* and *City of Bourbon v. Miller, supra*. In those cases the city attempted to annex two or more geographically disparate areas by means of one annexation ordinance. In each, the court found that the city had failed to meet its burden of proof as to one entire tract, thus reversal was required. The case here is different. The appellants do not challenge the annexation of a separate tract, but of a small part of a large contiguous area. The country club occupies 176 acres, approximately 5% of the total annexation. A former president of the club, Corliss Jones, testified of the benefits jointure would bring to the club from police, fire, sewer service and zoning regulation. In fact, the Board of Directors of the club actively sought to be included in the proposed annexation and, it may be fairly assumed, that the consultations between the mayor and Jones which resulted from that overture, led to the requested consummation. The cemetery abuts a segment of the westernmost boundary of the proposed area and its inclusion results in a more regular city boundary. The city had an interest in protecting both the country club and cemetery because of the relationship between them and the Jefferson City community, and the reasonableness of their inclusion was at a minimum fairly debatable.

■ The final issue contends that the other critical statutory element was not met: that evidence did not show that the city could furnish normal municipal services to the annexed area. The proper test, however, is whether the city is able to furnish to the area *services which the municipality presently provides* its populace. *City of St. Ann v. Buschard*, 356 S.W.2d 567, 579 (Mo. App.1962). The city met its burden of proof on this issue. The modern sewage disposal plant owned and used by the city operated at less than two-thirds of capacity and was sufficient to serve the included area. The municipal capacity to serve the area by means of modern police and fire forces are amply shown. The diverse recreational services of the city would be immediately open to the area; planning and zoning services would extend to them, along with the protection of building codes. The city street department will add such new services as traffic control and street cleaning.

■ The finding of the trial court that Jefferson City has the ability to extend within a reasonable time after effective annexation its municipal services to the proposed area rests on substantial evidence and is sustained. *Murphy v. Carron, supra*.

The judgment is affirmed.

All concur.